ANNA M. AGENS, executrix of Thomas Agens, deceased,.

*v.*

FREDERICK G. AGENS.

1. An action at law may be brought on a promissory note, payable on demand, immediately after its delivery and before any actual demand has been made.

2. Where no time of payment is expressed in a promissory note, or other instrument for the payment of money, the law adjudges that the parties meant that the money should be payable immediately.

3. No suit can be maintained in equity for a cause of action for which there is an adequate and complete remedy at law.

4. Where there is both a legal and equitable remedy for the same cause of action, if the legal has become barred by lapse of time, the equitable will also,. except under very special circumstances, be held to be barred.

5. Trusts over which the common law courts can exercise no jurisdiction, and which can only be enforced in equity, are not affected by the statute of limitations, nor by any principle of analogy deducible therefrom.

On final hearing on bill and answer and proofs taken orally.

*Mr. Joseph A. Beecher* and *Mr. Frederic W. Stevens*, for the complainant.

*Mr. William B. Guild* and *Mr. Theodore Runyon*, for the defendant.

VAN FLEET, V. C.

Though several grounds of action are set forth in the bill in this case, the only evidence produced by the complainant on the hearing in support of them is such as is found in a mutilated writing. This writing, before its mutilation and when in its original state, contained these words:

"$29,536.96-100.                    NEWARK N. J., May 29th, 1877.
"Due Thos. Agens Twenty Nine Thousand Five Hundred and Thirty Six 96-100 Dollars for cash deposited in trust with me Fredk. G. Agens."

Agens v. Agens.

But when it was put in evidence the last four letters of the defendant's signature had been torn from it, so that nothing remained of his signature but " Fredk. G. A." No attempt was made to show that the mutilation was the result of accident or mistake. The paper was simply put in evidence without explanation of any kind. No attempt was made to show how, when or by whom it was mutilated; nor when it was found, whether before or after the testator's death; nor where it was found, whether in the testator's possession and among his securities or among his canceled papers, or in the possession of a third person. All we have is the paper in its mutilated condition, with such evidence as the paper itself furnishes respecting the way in which its mutilation was effected. The irregular and jagged edge of the paper shows, with almost absolute certainty, that it was mutilated by tearing. The tearing was done, as the appearance of the paper indicates, not recently but long ago; the part torn off or separated was not preserved, at least it has not been produced; so far as appears the person who tore the paper made no attempt, after its mutilation, to restore the piece torn off to its original place, by pasting or otherwise; and the case is barren of the least evidence going to show that the defendant was ever requested to execute a new paper because the first had been accidentally mutilated. These things, when considered together, go very far towards raising a presumption, well nigh conclusive, that the mutilation was not accidental or unintentional, but was, on the contrary, done with intent to cancel the paper, and thus extinguish all right under it.

To put the case in the strongest possible form for the complainant, let us suppose that the mutilation was accidental, or, better still, let the paper be considered as before the court unmutilated and in its original integrity, then the question would be, Does the breach of such a contract as the paper expresses, or as must be implied from its language, lay the slightest foundation for a decree in equity? Or, stated in another form, Does the breach of such a contract constitute a wrong which may be redressed in equity? This question can be answered in but one way. The case which would thus be presented would, as it seems

to me, be thoroughly devoid of the least equitable element. The paper is a due bill. Such instruments have, in repeated instances, been adjudged by courts, whose judgments are entitled to the highest respect, to be promissory notes. The cases on this subject will be found cited in a note to page 25 of *1 Pars. Bills & N.*, and in a note to sections 36 and 37 of *1 Dan. Neg. Inst.* But it is not necessary to the proper decision of this case to determine the exact legal character of this paper in this respect. It is enough to say that it acknowledges that there was due to the person named as payee, on the day of its delivery, for cash deposited with the maker, a certain sum of money, so that by its own plain terms, as well as by the effect which the law gives such an admission, the sum which it admitted to be due became immediately payable. Its delivery gave the payee an instant right of action, and if he had brought a suit at law on it the next hour after its delivery, he could have maintained it. *Sackett* v. *Spencer, 29 Barb. 180, 184.* The doctrine is settled that an action at law may be brought on a promissory note, payable on demand, immediately after its delivery and before any actual demand has been made. *Larason* v. *Lambert. 7 Halst. 247; Gutch* v. *Fosdick, 3 Dick. Ch. Rep. 353, 355.* Where no time of payment is specified or expressed in a note, or other instrument for the payment of money, the law adjudges that the parties meant that the money should be payable immediately. "This," said Chancellor Kent, while chief-justice, "is not only a positive rule of the common law, but it is a general rule in the construction of contracts. When the operation of a contract is clearly settled by general principles of law it is taken to be the true sense of the contracting parties." *Thompson* v. *Ketcham, 8 Johns. 190, 192.* This rule of construction was adopted and enforced by this court, and also by the court of errors and appeals, in *Green* v. *Richards, 8 C. E. Gr. 32, 536.* Such being the right and liability which the execution and delivery of this paper created, there would seem to be no ground whatever upon which a court of equity, in the rightful exercise of its power, could, in case either the right or liability thus created was disputed, upon the paper alone and without a single other fact or circumstance rendering a resort to

equity either necessary or proper, exercise the slightest jurisdiction over the controversy.    That such a case would be the proper and exclusive subject of common law cognizance is a proposition which I do not think is open to debate.

The dividing line between the two jurisdictions is well defined and may be described as follows :    No suit can be maintained in equity for a cause of action for which there is an adequate and complete remedy at law.    This is a jurisdictional regulation which may not be transcended without usurpation.    *Freeholders of Essex* v. *Newark Bank,* and *S. C. on appeal, 3 Dick. Ch. Rep. 51, 627,* furnishes an apposite illustration of the way in which this regulation is applied and enforced.   The material facts of that case, briefly stated, were :   The county collector of Essex county deposited part of the money which came to his hands as collector in a bank in his own name, adding the word " collector."    After he had ceased to be collector, by the election of another person to that office, he refused, on the request of the board of freeholders, to turn over the moneys so deposited and still standing to his credit in bank, and the bank also refused to honor a check drawn by the new collector against the fund. The former collector refused to turn over the money because he insisted that he was still in office, the election of his successor having been made without authority of law, and the bank put its refusal to honor the check of the new collector on the ground that it could not safely pay money on a check drawn by any other person than the person to whose credit the money stood on its books, for the reason that, by the contract, arising by implication of law from such credit, the bank became the debtor of the depositor, and stood liable at law alone to him, and consequently a payment on the order of any other person would not discharge its liability, but leave it still liable at law to the depositor.    The position taken by the bank seemed to me to be sound.    The view I took of the case was this :    That while the equitable title to the money was in the board of freeholders, or they, at least, had a clear right in equity to control its disposition, still, as the bank had made no contract, expressed or implied, with them, it was subject to no obligation or duty to them

which could be enforced at law, and consequently the only remedy to which they could have recourse to establish their right to the money, as against both the bank and the, former collector, by a single action, was a suit in equity. The court of errors and appeals repudiated this view as erroneous, and held that, by the case made by the bill, it clearly appeared that the contract arising out of the deposit of the moneys was between the bank and the board of freeholders, and not between the bank and the former collector, and that it was, therefore, plain that the board of freeholders had a perfect remedy at law, and hence no right to maintain a suit in equity. This application of the rule of jurisdiction under consideration makes it entirely clear, as it seems to me, that if the paper, on which the complainant's right of action rests, was still perfect, the case made by it would be one over which this court could not exercise the least jurisdiction.

But it is claimed that this court should take jurisdiction of the case, because, by the execution and delivery of the paper, a trust was created. The due bill does say that the sum which it admits to be due is " for cash deposited in·trust," but the paper itself declares no trust, and none is averred in the bill nor proved by the complainant. The defendant, by his answer, says that the money was deposited with him under an understanding that he would pay out the same, from time to time, as the testator should direct. Now, it may be, if the word " trust," as here used, is understood in its broadest and most comprehensive sense, it will follow that it must be admitted that the delivery of the paper created a trust, for, as was said by Chancellor Kent, in *Kane* v. *Bloodgood, 7 Johns. Ch. 90, 110:* " Every deposit is a direct trust, and every person who receives money to be paid to another or to be applied to a particular purpose, to which he does not apply it, is a trustee, and may be sued, either at law for money had and received, or in equity as a trustee for a breach of trust." But the admission of such a trust will not help the complainant, for it unquestionably belongs to the class which are cognizable at law, and it is, therefore, subject to the rule that, if an action at law to enforce it is barred by the statute of limitations, such

Agens v. Agens.

lapse of time will also constitute a complete bar to a suit in equity.   No principle, governing the right to remedies, is better settled than that which declares that where there is both a legal and equitable remedy for the same cause of action, if the legal has become barred by lapse of time, the equitable will also, except under very special circumstances, be held to be barred. *Somerset Bank* v. *Veghte, 15 Stew. Eq. 39; Smith's Administrator* v. *Wood, 15 Stew. Eq. 563; affirmed on appeal, 17 Stew. Eq. 603.* All right of action at law on this paper had been barred for more than eight years when the bill in this case was filed.   The paper bears date May 29th, 1877.   It admits that the sum specified in it was then due, so that its delivery gave the payee an immediate right of action, against which the statute of limitations commenced to run at once, and the bill in this case was not filed until August 4th, 1891, more than fourteen years after the cause of action, on which it is founded, arose.   By his answer, the defendant insists that the complainant's right of action was barred before this suit was commenced.   His insistment, in my judgment, is true and must prevail.

But one thing more need be said on this branch of the case. There are trusts which are not subject to or affected by the statute of limitations, nor to the rule of analogy deducible therefrom.   They are such as are not cognizable at law, and over which the common law courts can exercise no jurisdiction, but are technical and continuous in their nature, and for that reason come properly within the exclusive jurisdiction of courts of equity and cannot be enforced or efficiently administered by any other tribunal.   This is the rule laid down by Chancellor McGill, in *Gutch* v. *Fosdick, 3 Dick. Ch. Rep. 353,* as the established law of this state.

The defences thus far considered do not touch the merits of the case, but rest on principles regulating jurisdiction and the effect of laches.   A defence on the merits has also been made, and, I think, successfully.   The defendant admits that the testator made two deposits with him in addition to the one made May 29th, 1877, namely, one on the 9th of April, 1877, of $2,000, and the other on the 13th of January, 1878, of $365.

So that the total amount received, including the $29,536.96, was $31,901.96. The defendant says that the whole of this sum has been repaid, the last payment having been made on the 9th day of April, 1878, after an accounting by which the balance remaining in his hands was ascertained. As evidence of the repayment, thirty-six checks are produced. Twenty-nine of them were payable to the testator, and the checks themselves show that they were all paid by the depository on which they were drawn. The amount paid out on them is $25,269.27. The other seven were payable to other persons than the testator, but the defendant alleges that they were so drawn by the testator's direction, and that the money obtained on them was applied to his purposes. As to most of them the proofs show that that is the fact, and that the money drawn on them was used for the testator's benefit. The total sum drawn on the seven is $6,171.67, making the aggregate drawn on all the checks $31,440.94. It thus appears that the total sum drawn on the thirty-six checks falls short of the total sum deposited only $461.02. As to transactions with the testator the defendant's mouth is closed by law. If the whole or any part of the $461.02 was returned in money, the defendant cannot prove that fact by his own oath.

But it is contended that the checks, standing alone, are not evidence of payment. Under the rule laid down in *Bunting* ads. *Allen, 3 Harr. 299, 304,* it is insisted that the production of a check in evidence simply raises a presumption that the drawer was indebted to the payee in the particular sum mentioned in the check, and that it was given in payment of that specific debt; and that that presumption must stand until it is proved that the check was given in payment or part payment of the debt or claim which is the subject of the controversy. The adoption of this rule, as the rule of decision in this case, will not entitle the complainant to prevail, for, in my judgment, the proofs plainly show that the checks put in evidence by the defendant were given in payment of the debt on which this suit is founded. This fact may be proved by circumstances as well as by direct evidence. The circumstances which I think prove it are: The case is barren of the least evidence tending to show that there were any

business relations or dealings between the defendant and the testator except such as consisted in the deposits under consideration. The terms of the deposit, as stated by the defendant, and adopted as true by the counsel of the complainant on the argument, were that the money should be paid out from time to time as the testator should direct. It was to be withdrawn in parcels, in such sums and at such times as the testator might desire, so that the terms of the deposit rebut and overthrow the presumption which would arise under the rule above stated in ordinary cases. The last check given bears date April 9th, 1878, and the testator did not die until September, 1889, more than eleven years after the date of the last check. During this long period the testator never made a demand on the defendant for a further payment or any payment, nor claimed that the defendant was indebted to him, though the evidence shows that during the last three or four years of his life he was in such great need that he frequently borrowed money ranging in amounts from $5 to $300, and, lastly, the condition in which the due bill was found. Where it was found we do not know, but we do know, or, at least, we are compelled to presume, as no attempt has been made to prove the fact to be otherwise, that it was found torn and mutilated in such manner as to raise a very strong, if not a conclusive, presumption that it had been canceled with intent to extinguish all right created by it. I believe it was canceled because the debt for which it was given had been paid.

The complainant's bill must be dismissed, with costs.