Among the papers of the late Henry Bahr, who died in March, 1932, was found an interim receipt issued by defendant, dated March 15th, 1929, which certified that he was entitled to two hundred shares of class A stock of the defendant corporation, and that upon surrender of the receipt *Page 125 
at the office of defendant the bearer thereof would be "entitled to receive, in exchange for this receipt, temporary or definitive stock certificates for a like number of shares of such stock, when, as and if issued for delivery in exchange for this and similar receipts." Also among Bahr's effects was his canceled check for $2,950 to the order of McMillen Company, dated March 7th, 1929, and paid, according to the perforation, two days later.
The same day of which the check bears date, there appeared in the New York papers an advertisement of McMillen Company, offering a new issue of ninety thousand shares of defendant, called class A stock, at a price of $14.75 per share.
The minute book of defendant shows that on February 18th, 1929, its board of directors resolved that the certificate of incorporation be amended so that the authorized capital stock should include shares of a certain description to be known as class A stock. The directors also called a meeting of stockholders to take action upon the amendment, and further resolved, in event the amendment was approved by the stockholders, that the officers of the company be authorized to enter into agreement with McMillen Company for the sale of the stock "upon a when, as and if issued basis, but it is to be clearly understood that the amendment to the charter is not to be made or any expenses incurred, unless the officers of this company shall have received satisfactory assurance of a sale of such a number of shares by McMillen Company to make advantageous the change."
On March 2d 1929, the stockholders amended the directors' plan for class A stock in two minor particulars and then adopted it.
Complainant, who is the executor of Mr. Bahr's will, in October, 1937, demanded of defendant a stock certificate in exchange for the interim receipt. He was referred to defendant's counsel, who told him that the issue of class A stock mentioned in the receipt had never been consummated and that he thought all the receipts had been called in and canceled. The company refuses either to issue the stock to complainant or to refund the money paid for it. *Page 126 
Complainant put in the proofs which I have summarized and thereupon both parties rested.
What inferences may be properly drawn from the foregoing data? McMillen Company offered defendant's class A stock at $14.75 a share. Two hundred shares at that rate would cost $2,950. The same, or the next, day Mr. Bahr gave that company a check for $2,950 and a few days later there was issued to him the interim receipt for two hundred shares. I think it a fair conclusion that the check was payment for the stock.
The directors of defendant a month earlier authorized its officers to enter into an agreement with McMillen Company in the event that the proposed amendment to the charter were approved by the stockholders. The stockholders approved the amendment with two minor changes. The terms of the McMillen agreement are not set forth but the minutes speak of it as an agreement "providing for the sale of stock," and also say that the officers must receive "satisfactory assurance of a sale of such a number of shares by McMillen Company" as would make advantageous the change. Clearly the contract related to a sale of stock by
McMillen Company, and not a sale to McMillen Company. Add the further circumstance already mentioned. A few days after Mr. Bahr paid McMillen Company the advertised price for two hundred shares, the company issued its interim receipt not to McMillen Company but to "Mr. Henry Bahr, 313 E. 102nd Street, New York City." It seems to me unescapable that McMillen Company was the agent of defendant in the receipt of Mr. Bahr's money. But I must also conclude from complainant's omission to prove the contrary, that defendant never completed the amendment of its charter, or became empowered to issue the class A stock.
On these facts, complainant prays that defendant be required to issue to him the stock called for by the receipt. Or, in the alternative, that the contract be rescinded and the defendant be ordered to pay complainant $2,950 with interest. The answer, among other things, sets forth that complainant is barred by laches and that he should be denied equitable relief because he has an adequate remedy at law. *Page 127 
Complainant argues that testator, by paying for the stock, became a stockholder, that while a stock certificate is not indispensable, he is entitled to have one as evidence of ownership of the stock. This theory cannot prevail for defendant never completed the statutory steps requisite to the creation of the class A stock and no one can be a holder of stock which the corporation is not authorized to issue. New York and EasternTelegraph and Telephone Co. v. Great East Telephone Co.,74 N.J. Eq. 221, 228; 75 N.J. Eq. 297.
Complainant next contends that the corporation is bound by its contract to take steps to enable it to issue stock of the character described in his interim receipt. There is in the interim receipt no such express promise, though perhaps it may be implied from the whole instrument and especially from the statement that Bahr "is entitled to 200 shares." On the other hand, his right to a stock certificate appears to be limited by the phrase "when, as and if issued." These words are ordinarily words of condition or of conditional limitation. Colleton v.Malmstrom, 8 N.J. Mis. R. 418; 150 Atl. Rep. 230. I think the parties contemplated the possibility that defendant might decide to abandon its proposed stock issue; and intended in such event that the agreement between complainant and defendant should terminate. Indeed, if the plan, not abandoned, were altered substantially, the contract to take or to deliver the stock would be at an end. In re Civic, 34 Fed. Rep. 2d 624.
But assume that defendant was under a duty to amend its charter and issue its stock, complainant cannot have the discretionary remedy of specific performance, for the delay of nine years is too great.
Upon the failure of defendant to issue its class A stock, testator became entitled to a return of his money. AmericanTrading and Importing Co. v. Miron Lifson, 98 N.J. Law 737.
His right of action accrued upon the lapse of a reasonable time, from the date of the receipt. What is a reasonable time depends on the nature and circumstances of the transaction. Bound BrookStove Works v. Ellis, Ibid. 523. Testator had already paid over his money and was losing interest on it. *Page 128 
No dividends would begin to accrue on the stock he hoped to acquire, until it were issued. Probably a few months was a reasonable time, but let us say that his cause had accrued at the end of one year — eight years before suit was brought.
There was some debate between counsel whether defendant's obligation is a simple debt, or a trust; whether defendant was at liberty to use testator's money in its business, or was in duty bound to hold his money separate and intact until his shares of stock should be ready for him. For present purposes, an answer to the question is unneeded. In either case, complainant had a remedy at law for money had and received. Sherwin v.Sternberg, 77 N.J. Law 117; 78 N.J. Law 557. The action ofassumpsit for money received is, in its nature, equitable.Sergeant v. Stryker, 16 N.J. Law 464.
Complainant's cause of action at law was barred by the statute of limitations six years after it arose, that is, two years before the bill in chancery was filed. Where there is both a legal and equitable remedy for the same cause of action, if the legal has become barred by lapse of time, the equitable will also, except under very special circumstances, be held to be barred. This rule applies even though it be admitted that the action is founded on a trust, for the trust belongs to a class which are cognizable at law. Agens v. Agens, 50 N.J. Eq. 566.
"The same principle has been declared by Judge Story. He says: `As to cases of merely constructive trusts created by courts of equity, or cases which are treated, for some purposes, as implied trusts, to which, however, legal remedies are applicable, the doctrine cannot be admitted that the statute of limitations does not embrace them.' Robinson v. Hook, 4 Mass. 139, 152. * * * If the complainant in this case had a complete remedy at law, which has been lost by lapse of time, he is not entitled to the remedy he seeks here." Partridge v. Wells, 30 N.J. Eq. 176;31 N.J. Eq. 362.
Although the statute is not pleaded, defendant does plead "that the complainant is barred from relief because of laches;" and this, I think, is sufficient, for in equity the statute operates as a guide in determining whether complainant is guilty of *Page 129 
laches. "The statutes of limitations do not apply to courts of equity, for the reason that the words of the statutes apply only to particular legal remedies; but proceedings in equity to enforce a legal right, are within the spirit and meaning of the statute and have always been so considered." Depew v. Colton,60 N.J. Eq. 454. "Now, although strictly the statute of limitations bars legal remedies only, courts of equity, by their own rules, give great effect to length of time, and frequently refer to the statutes as furnishing a convenient measure for the length of time that ought to operate as a bar in equity of any particular demand." Arnett v. Finney, 41 N.J. Eq. 147.
Let the bill be dismissed. *Page 130