EDWARD T. SINGER, PLAINTIFF, *v.* SALT LAKE COPPER MN'F'G CO. ET AL., DEFENDANTS.

ABRAHAM HANAUER AND STEPHEN A. HARRISON, APPELLANTS, *v.* EDWARD T. SINGER ET AL., RESPONDENTS.

1. *Board of Directors—Meeting of—Where May be Held.*

Under section 493, 1 Mills: Ann. St. Colo., by virtue of which the Salt Lake City Copper Manufacturing Company was incorporated, and under the articles of incorporation and by-laws, the board of directors had the right to hold meetings beyond the limits of the State of Colorado.

2. *Same—Presumption—Burden of Proof.*

Where meetings of a legally constituted board of directors, have been held and business transacted within the scope of, and pursuant to, the purposes for which the corporation was organized, the presumption is that such meetings were regularly called and held for the transaction of such business, and the burden of proof is upon him who maintains the contrary to allege and prove that they were not so called and held.

3. *Trust Deed—Execution of.*

Where a committee was authorized by the board of directors to procure a loan for the corporation, and the officers who executed a trust deed to secure it were expressly authorized to do so by the board, and by virtue of the by-laws were proper officers to execute it, the validity of the trust deed executed by such officers cannot be assailed on the ground that the instrument was not signed by the president and secretary of the corporation.

4. *Stockholders—Directors—Dealing with Corporations.*

Where there is an entire absence of a want of good faith, fraud, and collusion, and the corporation is yet a going concern, no sound principle of law prohibits a stockholder or director from dealing with the corporation. Contracts made

by the corporation with its officers are not void per se; but such contracts will be carefully scrutinized in equity, and will be set aside if not made in the utmost good faith.

5. *Corporations—Board of Directors—Notice of Meetings—Exceptions.*

As a general rule, notice must be given in some way to all directors, of meetings of the board, where the by-laws and rules of the corporation do not provide the time and place of meeting, in order to render them valid; but there are some exceptions, as where such an emergency exists as justifies immediate action on the part of the board, and the giving of notice to all the members is not practicable, or where a director should secrete himself in order to prevent a meeting, or is beyond the reach of notice.

6. *Meeting of Board of Directors—Unlawfully Convened—Acts Done Void.*

Where a meeting of a quorum of directors of a corporation is convened without notice to the absent members, or the existing of such an emergency as would excuse notice, the acts done at such meeting are void.

7. *Corporation—Insolvency—Trust Deed—Effect of.*

The fact that a corporation was insolvent when a trust deed was authorized and executed, alone, would not, per se, render the instrument void.

No. 912.　Decided July 14, 1898.

Appeal from district court, Salt Lake county; Ogden Hiles, *Judge.*

Suit by Edward T. Singer against the Salt Lake City Copper Manufacturing Company, Abraham Hanauer, Stephen A. Harrison, and others. From the decree rendered, defendants Hanauer and Harrison appealed. *Affirmed.*

*Frank Pierce,* for appellants:

There are a large number of well-considered cases that

hold that a director who is abroad and traveling abroad, or who cannot be readily reached to attend directors' meetings, need not be notified, and that in the absence of notice under such circumstances, the meeting will be upheld.   *Chase* v. *Tuttle,* 55 Conn. 455; 3 A. S. R. 64, 2 Cook on Stock and Stockholders, p. 1060, note 1; *National Bank* v. *Shumway,* 30 Pac. Rep. 411; Thompson on Corporations, secs. 936, 6479; *Bank* v. *Flour Co.,* 41 Ohio St. 552; *Edgerly* v. *Emerson,* 23 N. H. 555; *Halifax* v. *Francklyn,* 62 L. T. Rep. 56.

The executed contracts of a corporation must be allowed to stand when the plainest rules of good faith require it.   Contracts which, though invalid for want of corporate power, have been fully executed, shall remain as the foundation of rights acquired by the transaction. *Hervey* v. *Railway Co.,* 28 Fed. 173; *Parish* v. *Wheeler,* 22 N. Y. 494; *Gold Mining Co.* v. *National Bank,* 96 U. S. 640; *National Bank* v. *Matthews,* 98 U. S. 621; *Texas, etc.,* v. *Gentry,* 69 Texas 628; 5 Thompson on Corporations, secs. 6159; *Galveston Railroad Co.* v. *Cowdery,* 78 U. S. 559 (476.)

There is no question in the case at bar that the directors had a right to give the mortgage.   It is *intra vires.* Many cases even go to the extent of holding that a corporation can be estopped from setting up the defense that the contract is *ultra vires. Campbell* v. *Argenta Gold & Silver Mining Company,* 51 Fed. 1 (p. 8); *Beecher* v. *The Marquette & Pacific Rolling Mills Company,* 45 Mich. 103; *Hervey* v. *Illinois Midland Ry. Co.,* 28 Fed. 169. (173-4); *Thomas* v. *Citizens Railway Co.,* 104 Ills. 462; *Green Point Sugar Company* v. *Whitin,* 69 N. Y. 329; *Rochester Savings Bank* v. *Averell,* 96 N. Y. 467, 476; *Welch* v. *Importers & Traders Bank,* 25 N. E. 271 (N. Y.); II Morawetz on Corporations, secs. 635, 675; II Cook on Stock and Stockhold-

ers, sec. 779, and note 2, page 1264, and cases cited in the note; *Coe* v. *East & West Railroad Co.*, 52 Fed. 531; 5 Thompson on Corporations, sec. 6165; *Star Printing Co.* v. *Andrews*, 9 N. Y. Sup. 731; *State of Indiana* v. *Woram*, 40 Am, Dec. 378 (note 381); *Whitney Arms Co.* v. *Barlow*, 63 N. Y. 62; *Bissell* v. *Mich. So., etc.*, 22 N. Y. 258.

A corporation will not be allowed, after receiving the loan secured by the mortgage, to avoid its liability by raising the question of its power to make the mortgage or showing that such power has been deficiently executed. Short on Railway Bonds and Mortgages, sec. 178, and cases cited in note 2 and note 3; *The Aurora Society* v. *Paddock*, 80 Ills. 263; *Peoria Railroad Co.* v. *Thompson*, 103 Ills. 187.

That the verity of the minutes as written in the minute book may be relied on see: *Whiting* v. *Wellington*, 10 Fed. 810; Cook on Stock and Stockholders, sec. 714; *Commissioners* v. *Aspinwall*, 21 How. 539; Beach on Corporations, sec. 295.

The idea that the same persons constitute different identities of themselves by being called directors or officers of a corporation, so that as directors or officers they can convey, or mortgage to, or contract with themselves as private persons, is in violation of common sense. *Haywood* v. *Lumber Co.*, 64 Wisconsin 647; 3 Thompson on Corporations, secs. 3929, 4059; *Miner* v. *Ice Company*, 93 Mich. 97 (100, 109); *Oil Company* v. *Marbury*, 91 U. S. 587.

*Shepard & Sanford*, for respondent Kimball:

The following authorities support the general proposition that notice must be given: *Farwell* v. *The Houghton Copper Works*, 8 Fed. Rep. 66; Morawetz Private Cor., sec. 532; *Corn Exch. Bank* v. *Cumberland Coal Co.*, 1 Bosw. 436;

Spelling on Private Cor., sec. 424; *Thompson* v. *Williams*, 76 Cal. 153; Waterman on Cor., sec. 62; Angell & Ames on Cor., sec. 291; *Wiggin* v. *Baptist Soc.*, 8 Met. 301; *Stowe* v. *Wise*, 7 Conn. 219; Taylor Private Cor., secs 260 and 261; *In re Homer, etc.*, 24 Am. & Eng. Corp. Cases 28; Note 19 Am. & Eng. Corp. Cases 128; *Jackson* v. *Hampden*, 20 Me. 37; *San Buenaventura, etc.*, v. *Vassult*, 50 Cal. 534; *Gashwiler* v. *Willis*, 33 Cal. 11; *Harding* v. *Van de Water*, 40 Cal. 81.

It is decided in this state that a corporation cannot prefer its directors as principal or surety. For authorities supporting the proposition, see: *Lowry Banking Co.* v. *Empire Lumber Co.*, 17 S. E. 968 (Ga.); *Lippincott* v. *Shaw Carriage Co.*, 25 Fed. Rep. 577; *Ingversen* v. *Edgcomb*, 60 N. W. 1032; *Howe* v. *Sanford Fork, etc.*, 44 Fed. Rep. 231; *Tillson* v. *Downing*, 63 N. W. 836; *Love, etc.* v. *Queen, etc.*, 20 S. R. 146; *Consolidated Tank Line Co.* v. *Kansas City Varnish Co.*, 45 Fed. Rep. 7; *Bosworth* v. *Jacksonville*, 12 C. C. A. 334; *Williams* v. *Jackson Co. Patrons*, 23 Mo. App. 132; *Gottleib* v. *Miller*, 39 N. E. Rep. 992 (Ill.); *Goodyear Rubber Co.* v. *Scott Co.*, 96 Ala. 439; *Gibson* v. *Trowbridge Furn. Co.*, 96 Ala. 357; *Haywood* v. *Lincoln Lumber Co.*, 64 Wis. 639; *Smith* v. *Putnam*, 61 N. H. 632; *Beech* v. *Miller*, 130 Ill. 162; 17 Am. St. Rep. 291; reversing same case, 23 Ill. App. 151; *Roseboom* v. *Whittaker*, 132 Ill. 81; s. c. sub nom; *Roseboom* v. *Warner*, 23 N. E. Rep. 339; *Richards* v. *New Hampshire Ins. Co.*, 48 N. H. 263; *Carey* v. *Wadesworth* (Ala.), 11 So. Rep. 350; *Sicardi* v. *Keystone Oil Co.*, 149 Pa. St. 148, upon appeal of Kerstetter; *Kanakee Woolen Mill Co.* v. *Kampe*, 38 Mo. App. 229; *State* v. *Brockman*, 39 Mo. App. 131; Olney C. Conanicut Land Co., 16 R. I. 597; 6 Rail. & Corp. L. J. 414; 40 Alb. L. J. 325; 29 Cent. L. J. 333; 5 L. R. A. 361.

In many of the above cases the preference was attempted

by means of a mortgage, but they were subjected to the same test as if they were deeds of assignment.

It is now settled in this State that a preference to a director is fraudulent. *Coblentz* v. *Driver Mer. Co.*, 10 Utah 96; *Mercantile Co.* v. *Mt. Pleasant Co-op.*, 12 Utah 213; *Wyeth, etc.*, v. *James, etc.*, 47 Pac. Rep. 604; *Colo. Fuel & Iron Co.*, v. *Western Hardware Co.*, 50 Pac. Rep. 628.

The following cases hold that under the circumstances of this case the creditors may attack because of the fact notice was not given. *Wiggins* v. *Free Will Baptist Society*, 49 Mass. 301; Thompson on Corporations, sec. 6478 *et seq.*, sec. 6200; *Richardson's Exrs.* v. *Greene*, 133 U. S. 30; 1 Beach Corp., sec. 241; Waite Insolvent Corporations, sec. 156; *National Trust Co.* v. *Miller*, 33 N. J. Eq. 155; Morawetz Corp., secs. 787 and 788.

"Subrogation by operation of law exists in favor, not of all who pay the debt of another, but only in favor of those who, being bound for it, had therefore discharged it." Sheldon on Subrogation, sec. 241 and cases cited, 1st Ed.; see, also, sec. 240; Harris on Subrogation, secs. 795 and 796; *Receivers of New Jersey Midland R'y Co.* v. *Wortendyke*, 27 N. J. Eq. 661; *Good* v. *Golden*, 19 Southern Rep. 100; *Mellen* v. *Morristown & Co.*, 35 S. W. 468; *Kleiman* v. *Geiselman*, 21 S. W. 796; *Wentworth* v. *Tubbs*, 55 N. W, 543.

The utmost good faith was exercised in procuring this loan, and Singer and May were competent to act. *Leavett* v. *Oxford*, 3 Utah 272; *Clement Bane & Co.* v. *Michigan Clothing Co.* 68 N. W. 224 (Mich.); *Rolling Stock Co.* v. *Railroad Co.*, 34 Ohio St. 450; *Duncomb* v. *New York, etc.*, 88 N. Y. 1.

*Williams, Van Colt & Sutherland, George A. Smith* and *Marshall & Royle, John W. Burton, Dickson, Ellis & Ellis,*

*C. F. Loofbourow, Alton T. Sanford,* for the several respondents:

The presumption of law is that directors' meetings are regularly called and held, and the burden of proof is on the one alleging the contrary. *Leavitt* v. *Oxford, etc. Co.,* 3 Utah 265; 3 Thomp. Cor. 3926-27, 3934; 1 Cook Stock, sec. 600; *Chouteau Ins. Co.* v. *Holmes,* 30 A. R. 807; *Hardin* v. *Ia., etc. Co.,* 43 N. W. 543; 1 Mor. Cor., sec. 532.

The Hanauer trust deed is void under the circumstances. 1 Mor. Cor. sec. 532. 1 Beach Priv. Cor. sec. 279, note 7; Angell & Ames Corp. sec. 492; *Stowe* v. *Wyse,* 18 A. D. 99 (7 Conn. 214); *Farwell* v. *Houghton Copper Wks.,* 8 F. R. 66; *Harding* v. *Vandewater,* 40 Cal. 77; *Wiggin* v. *The Elder & Deacons, etc.,* 49 Mass. 301; *Doernbecher* v. *Columbia, etc., Co.,* 28 Pac. Rep. 899; 5 Thomp. Cor., sec. 6176; *Simon* v. *Sevier, etc., Asso.,* 14 S. W. 1101; *Bank of Little Rock* v. *McCarthy,* 29 A. S. R. 60 (55 Ark. 473).

The Hanauer trust deed is void, because the company was insolvent when it was executed. *Mercantile Co.* v. *Mt. Pleasant, etc.,* 12 Utah 233; 17 A. S R. 291 and note; *Thompson* v. *Huron Lumber Co.,* 30 P. R. 742; *Rouse* v. *Mercs. National Bank,* 46 Ohio St. 493; *Sayler* v. *Simpson,* 24 N. E. 596.

Therefore the Hanauer trust deed was invalid as to every one, both because unauthorized and because of the fraud and unconscientious advantage sought to be obtained; being void in part it is void in toto. *Coblentz* v. *Driver Mer. Co.,* 10 Utah 96; *Mercantile Co.* v. *Mt. Pleasant Co-op.,* 12 Utah 236; *Hard. Co.* v. *Hardware Co.,* 47 P. R. 604.

A single fraudulent preference shows the fraudulent intent and will vitiate the instrument entirely. *Coblentz* v. *Driver Mer. Co.,* 10 Ut. 96; *Mer.* v. *Mt. Pleasant Co-op.* 12

Ut. 236; *Goddrick* v. *Downe*, 6 Hill 438; *Vernon* v. *Upson*, 60 Wis. 418; *Cunningham* v. *Freeborn*, 11 Wend., 240; *Burt* v. *McKinstry*, 4 Minn., 204; *Gere* v. *Murrray*, 6 Minn., 305.

The plaintiff brought this suit to foreclose a trust deed on certain property of the defendant the Salt Lake City Copper Manufacturing Company, situate in Salt Lake county, Utah, to have declared void another trust deed affecting the same property, and to have a receiver appointed for the company. A number of creditors were made defendants, and the appellants, Hanauer and Harrison, who claim under the trust deed which it is sought to have declared a nullity, were also made defendants. The material facts appearing from the record are, in substance as follows: The Salt Lake City Copper Manufacturing Company is a corporation organized under the laws of the state of Colorado, and doing business in the state of Utah. The plaintiff was one of its stockholders and directors, and is one of its creditors, secured by the trust deed on which this suit is brought. Early in the year 1893 the defendant copper company purchased a tract of land at Salt Lake City, commenced the construction of an extensive electrolytical plant and copper refinery, and in the erection of a building, furnishing of machinery, and in improvements, expended about $555,000 by September, 1894. In May, 1894, the company had overdrawn its account at the bank of McCornick & Co.; the money which constituted the overdrafts having been used to purchase machinery and prosecute the enterprise. For the purpose of paying these overdrafts and other bills, and to continue the enterprise, it was deemed necessary, it appears, to negotiate a loan; and on May 23, 1894, the board of directors of the company held a meeting in the city of New York, and authorized a committee to procure a loan of $100,000, and also authorized the proper officers of the

company to execute the notes for the same and a trust deed on its property as security. The loan was to be made for one year, with interest at 8 per cent per annum. On June 1, 1894, another meeting of the board of directors was held, in the city of Denver, Colo., when the loan was perfected by the execution of notes and a trust deed pursuant to the resolution of the board at the New York meeting. The money constituting the loan was furnished by parties as follows: E. T. Singer, the plaintiff, $25,000; Harriet L. Green, $25,000; L. D. Shoenberg, $30,000, and S. W. Peck, $20,000,—a note being executed to each party, with interest and principal payable at the bank of McCornick & Co. The trust deed securing these notes was executed and delivered to David May, but was not recorded. After paying the overdrafts with this money, the company had a balance to its credit on deposit. During the time of these meetings the directors were S. M. Green, A. Saks, E. T. Singer, David May, and Otto Mears. At the meeting in New York all were present except Mears, and at the one in Denver all except Saks and Green. How the directors were summoned to the meetings does not distinctly appear from the record, but the court found that the board acted duly and regularly. Under the articles of incorporation, by-laws, and laws of Colorado, the directors of the company could hold meetings beyond the limits of that state. At the time of procuring the loan the company, it seems, was regarded as being on a good financial basis; and, as appears, it was expected that the money thus obtained would complete the plant, so that active operations could be commenced. It also appears that there was an attempt made to procure this loan from parties who had no interest in the company, but without success. Thereafter, during the summer of 1894, the company again became indebted; and thereupon the directors

were summoned to Salt Lake City, where, on September 20, 1894, they held another meeting of the board for the purpose of adjusting the affairs of the company. The corporation was then owing at the bank of McCornick & Co., on the overdrafts, the sum of $50,000. The payment of this sum was guaranteed to the bank by Directors Green, Singer, and Mears, and provision was made at the meeting for the payment of other bills. After the business had been transacted and the board had adjourned, Green and Mears resigned their positions as directors, and J. E. Shoenberg, and Morris May were substituted in their places. The next day, September 21, Singer started for Chicago. On September 24, 1894, David May, A. Saks, and J. E. Shoenberg, knowing of the departure and destination of the plaintiff, held a meeting without previous notice thereof to the directors. At that meeting a resolution was passed authorizing the execution of three notes—one for $75,000 to A. Hanauer, for the benefit of McCornick, to cover the $50,000 overdraft, and $25,000 to be thereafter advanced to pay the balance of the purchase price of mines, which balance was not yet due; another for $2,200 to Otto Stalmann; and another for $50,000 to A. Saks and David May. Thirteen thousand dollars of the $25,000 future advancement under the McCornick note was paid as balance of purchase price for the Copper Mountain group of mines in Box Elder county, Utah, and the remaining $12,000 thereof was likewise paid for the Copperopolis mine. Simultaneously with the execution of the notes a second trust deed was authorized, and executed to A. Hanauer, trustee, on all the property of the corporation, including after-acquired property, to secure, according to the order of preference therein provided— First, the McCornick note of $75,000; second, the Stalmann note of $2,200, and the $50,000 note of Saks and

May; and third, the four notes amounting to $100,000, secured by the former unrecorded trust deed. These directors, as well as Hanauer and McCornick, at and before the holding of the meeting of September 24, and the execution and delivery of the notes and trust deed authorized by that meeting, knew of the existence of the unrecorded trust deed, and were aware of its terms and conditions. The plaintiff had no notice of this meeting, and was not aware of what was done by the three directors until some time thereafter. The last trust deed was promptly recorded. The McCornick note of $75,000 and trust deed were transferred after maturity, for value, to the appellant S. A. Harrison, but with knowledge of the prior trust deed. As a part of the transaction which took place on September 24, there was also transferred to A. Hanauer, as trustee, 99,997 shares of the capital stock of the Utah Mining Company, to be sold in case of sale under the trust deed. It appears from the evidence, and the court found, that at the time of the execution of the second trust deed the company was insolvent, and known to be so by the parties to that instrument. It was attempted to sell the company's property under the last trust deed when the plaintiff instituted this action. S. W. Peck, L. D. Shoenberg, and Harriet L. Green, three of the parties, whose claims were secured by the first trust deed, never were directors of the company. Charles D. Kimball and the Gillette-Herzog Manufacturing Company are creditors, and are also parties to this suit. At the trial the court held the first trust deed valid, the second one invalid, and entered a decree determining the equities of the various parties accordingly, and made perpetual an injunction theretofore issued restraining sale under the second trust deed. The property was ordered to be sold to satisfy the several

liens, in the order of priority declared in the decree. The defendants Hanauer and Harrison appealed.

BARTCH, J. (after stating the facts):

The first assignment of error which we will consider is the one respecting the holding of the court, that the first trust deed, or that executed June 1, 1894, is valid. The appellants insist that it is void, and appear to base their contention upon the grounds that the meetings of the board at which it was authorized and executed were not legally called, that the deed was not signed by the president and secretary, and that one of the beneficiaries was a director of the corporation, and participated in the meeting at Denver when the trust deed was executed. Under section 493, 1 Mills' Ann. St. Colo., by virtue of which the Salt Lake City Copper Manufacturing Company was incorporated, and under the articles of incorporation and by-laws, there is no doubt that the board of directors had the right to hold meetings beyond the limits of the state of Colorado; and the question, therefore, as to the first point of contention, is whether the meetings at New York and Denver were lawfully convened. A careful examination of the record reveals nothing to show that either one of these meetings was convened without notice to all the directors. On the contrary, from the minutes of the New York meeting it is clear that the board met on call of the president at New York on May 23, 1894. Whether this call was made by previous order of the board, as provided in the articles of incorporation, or whether all the members were actually notified of the meeting, does not appear from the minutes. Nor is there any extrinsic evidence to show that the directors were not properly notified. It does appear that

four of the five members of the board were present, and participated in the meeting. So, of the Denver meeting, there is nothing to indicate that it was not a legally called meeting, of which all the directors had due and legal notice. The minutes of both meetings show the business which was transacted, and that a quorum was present. Under such circumstances, and in the absence of any evidence to show that the meetings were not lawfully convened, the court would not be justified in holding that these meetings were unlawful. Where meetings of a legally constituted board of directors have been held, and business within the scope of and pursuant to the purposes for which the corporation was organized was transacted, the presumption is that such meetings were regularly called and held for the transaction of such business, and the *onus probandi* is upon him who maintains the contrary to allege and prove that they were not so called and held. "This presumption includes the presumption that the meeting of a board of directors at which a given resolution was passed was regularly convened. Thus, where the validity of an act done at a special meeting of the board of directors of a corporation is drawn in question on the ground that some of the directors were not notified to attend the meeting, the burden is on the party attacking the regularity of the proceedings to show that the directors in question were not in fact notified. If it appear that a meeting was held, and that a quorum was present, it will be presumed, in the absence of evidence to the contrary, that due notice was given, and that all steps necessary to constitute it a regular and valid meeting were taken." 3 Thomp. Corp. § 3297. See, also, Id. § 3926; 1 Cook, Stock, Stockh. & Corp. Law § 600; 1 Mor. Priv. Corp. § 532; *Wells* v. *Rodgers*, 60 Mich. 525; *Leavitt* v. *Mining Co.*, 3 Utah 265; *Insurance Co.* v. *Holmes*, 68 Mo. 601;

*Hardin* v. *Construction Co.* (Iowa), 43 N. W. 543. And notice need not be affirmatively shown by the record. 3 Thomp. Corp. § 3934; *Sargent* v. *Webster*, 13 Metc. (Mass.) 497; *Wells* v. *Rodgers, supra.*

If, therefore, the appellants wished to attack the validity of either or both of the meetings in question, it was incumbent upon them, by proper averment in their answer, to raise the issue that the meeting or meetings were irregularly and illegally convened, because of want of notice or otherwise, and then to establish the fact by proof at the trial. The question of the legality of those meetings was one of grave importance to the plaintiff, because upon it depended the validity of the first trust deed, through which he and others claimed priority of payment over the appellants. This is especially so, owing to the insolvency of the common debtor. The plaintiff was entitled to be informed by their answer as to the true nature of the defense which his adversaries intended to make, so that he could prepare to meet it. "The very object and design of all pleading by the plaintiff, and of all pleading of new matter by the defendant, is that the adverse party may be informed of the real cause of action or defense relied upon by the pleader, and may thus have an opportunity of meeting and defeating it, if possible, at the trial. Unless the petition or complaint, on the one hand, and the answer, on the other, fully and fairly accomplishes this purpose, the pleading would be a useless ceremony, productive only of delay, and the parties might better be permitted to state their demands orally before the court at the time of the trial. The requirement, therefore, that the cause of action or the affrmative defense must be stated as it actually is, and that the proofs must establish it as stated, is involved in the very theory of pleading." Pom. Rem. & Rem. Rights § 554;

*Walton* v. *Minturn*, 1 Cal. 362; *Green* v. *Palmer*, 15 Cal. 412; *Campbell* v. *Jones*, 38 Cal. 507. There appear to be no allegations in the answers of the appellants that no notice of those meetings was given to the directors, nor that they were otherwise unlawfully held. They having failed to raise such an issue by the pleadings, and to establish the same by competent evidence, the presumption, "Omnia rite acta," must be held to apply, and the meetings be regarded as in all respects regular and valid.

There is no foundation for the contention that the first trust deed was not properly executed. A committee was authorized to procure the loan, and the officers who executed the trust deed were expressly authorized by the board, and by virtue of the by-laws were proper officers, to execute the deed. Nor can the fact that the plaintiff, who was a director and interested in the loan, participated in the meeting at Denver when the trust deed was executed and delivered, avail the appellants, under the facts and circumstances disclosed. The board of directors of the corporation consisted of five members, three of whom constituted a quorum, and at the meeting held in New York there were present four directors, and it is true that plaintiff was one of them, but there was a quorum present without him. At that meeting, by unanimous action, the board authorized a committee to negotiate a loan of $100,000, and empowered the proper officers to execute the necessary papers therefor, including a trust deed, on the property of the company. At that time the corporation was solvent—a going concern—and pursuing the objects of its creation. The loan was ordered to be negotiated for the purpose of paying its bills and overdrafts at a bank, and to complete and put into operation its electrolytical plant and copper refinery. The committee, it appears, found it difficult to procure the

entire sum from disinterested parties, and hence negoti-
ated with the plaintiff and three others, who furnished
the money; and at the meeting held in Denver the loan
which had thus been previously authorized was perfected,
by the proper officers executing and delivering the notes
and trust deed. There seems to be nothing in the trans-
action which is tainted with fraud or collusion. It has
the appearance of a fair business dealing, made, not for
the purpose of hindering or delaying creditors in the col-
lection of their claims, or securing an advantage over
creditors, or defrauding them, but for the purpose of dis-
charging honest obligations, and continuing the business
of the corporation. Under these circumstances, the mere
fact that a director furnished a portion of the money bor-
rowed does not have the effect of vitiating the trust deed
given to secure the loan. Nor would this trust deed be
void, under the circumstances surrounding its execution,
even if it were conceded that the plaintiff, being the direc-
tor who furnished a portion of the money, improperly
voted, as one of the quorum, at the Denver meeting where
the same loan was again authorized, because an examina-
tion of the minutes of the New York meeting shows that
the power then and there conferred upon the committee
to negotiate the loan was full and complete, and hence
there was no necessity for any further authorization at
the subsequent meeting. The mere doing of an unneces-
sary thing, at the Denver meeting, cannot have the effect
of rendering void what was lawfully done at the New
York meeting. At the time of the transaction neither the
good faith of the plaintiff nor of the other beneficiaries
was questioned by the company or any stockholder or
creditors, and months thereafter the claims of these bene-
ficiaries, including that of the plaintiff, were recognized
in the very trust deed under which the appellants claim;

and this with the knowledge of the appellants.    Where,
as in the execution of the trust deed here under considera-
tion, there is an entire absence of a want of good faith,
fraud and collusion, and the corporation is yet a-going
concern, no sound principle of law prohibits a stockholder
or director from dealing with the corporation.    A cor-
poration is an artificial entity, and one of the principal
objects of its creation is to contract with individuals in
due course of business.    This it may do with its directors
and stockholders as well as with others; and under the
weight of American authority, at least, contracts made by
the corporation with its officers are not void per se, but at
most voidable merely, at the election of the corporation or
its representatives, within a reasonable time.    Neither
the corporation nor a stockholder is complaining here.
It is quite true that since the will of such an officer goes
to make up or forms a part of the will of the legal entity,
and the officer is therefore, in some sense, on both sides
of the contract,—is dealing with a creature of which he
forms a part,—his contract with the corporation will be
very carefully and closely scrutinized in equity, and will
be set aside if not made in the utmost good faith.    This
doctrine was recognized by this court in *Mercantile Co. v.
Mt. Pleasant Equitable Co-operative Inst.*, 12 Utah, 213,
where it was said: "So, in the absence of contrary legisla-
tion, a mortgage executed by a corporation under embar-
rassed circumstances, to enable it to continue its busi-
ness, will be sustained if the whole transaction be in good
faith; and a corporation may also, in like manner, obli-
gate itself to a stockholder or director.    But in such last
cases a court of equity will very closely scrutinize the
transactions, and, in case of a contest between a general
creditor and a director or other managing officer, will re-
quire of the latter very strict proof of good faith, and that

the mortgage or other incumbrance was not executed in expectancy of insolvency, for the purpose of securing an advantage over other creditors; and such transactions may be set aside on slight grounds."

In *Oil Co.* v. *Marbury*, 91 U. S. 587, Mr. Justice Miller, delivering the opinion of the court, said: "While it is true that the defendant, as a director of the corporation, was bound by all those rules of conscientious fairness which courts of equity have imposed as the guides for dealing in such cases, it cannot be maintained that any rule forbids one director among several from loaning money to the corporation, when the money is needed, and the transaction is open and otherwise free from blame. No adjudged case has gone so far as this. Such a doctrine, while it would afford little protection to the corporation against actual fraud or oppression, would deprive it of the aid of those most interested in giving aid judiciously, and best qualified to judge of the necessity of that aid, and of the extent to which it may safely be given." 3 Thomp. Corp. §§ 4059, 4061; *Harts* v. *Brown*, 77 Ill. 226; *Saltmarsh* v. *Spaulding*, 147 Mass. 224; *Smith* v. *Skeary*, 47 Conn. 47; *Gas Co.* v. *Berry*, 113 U. S. 322; *Beach* v. *Miller*, 17 Am. St. R. 291; *Leavenworth Co. Com'rs* v. *Chicago I. & P. R. Co.*, 134 U. S. 688. Upon the foregoing considerations, we are of the opinion that the trust deed executed June 1, 1894, is valid.

This brings us to the question of the validity of the trust deed executed to A. Hanauer, trustee, on September 24, 1894. The appellants maintain that this trust deed is valid, while the respondents insist that it is void, because —First, no notice to directors was given of the meeting at which it was authorized; second, the company at the time of its authorization and execution was insolvent; and, third, for actual fraud. The main controversy on

this branch of the case is respecting the legality of the meeting held on September 24, 1894, and the motives which prompted the execution of the trust deed of that date. On the question of notice to directors of the meetings of the board, article 2 of the by-laws of the corporation, in conformity with section 493, 1 Mills' Ann St. Colo., provides: "The board of directors shall hold meetings, when called by the secretary, upon request of the president or any three directors, upon timely notice thereof." Under this provision of this by-law the directors were required to hold meetings, and were to have timely notice; that is, every director was entitled to have notice in some way of each and every meeting of the board. In general, the directors had no authority to act, except when lawfully convened upon notice to all of them. This is a rule common to all corporations, and prescribes the mode for convening the agents to transact corporate business. A corporation being but an artificial entity, has but one will, and this will is collected by the sense of a majority of the directors. Its will so collected, directs and controls the corporate acts. It is therefore important that every director should have an opportunity to be heard on all matters affecting the corporation, so that, through the sense of all, its best interests may be subserved. Every director is entitled to the reasoning, judgment, and advice of every other director, and cannot be deprived therefrom through failure to give notice. So the stockholders are entitled to have the corporate business conducted in view of the experience and wisdom of all the directors, and of this right they cannot be deprived by the arbitrary will of a quorum. It is true, it is not imperative for every director to be present at every meeting, but he should if possible, have notice, and an opportunity

17 Utah—11

to be present; for where matters to be acted upon call for
deliberation and judgment, all interests and parties to be
affected should have the benefit of the wisdom and coun-
sel of all those intrusted with the decision. Although all
may not concur, still the arguments and information of
each may modify and affect the conclusion which other-
wise might be reached. If notice were not required, it
would doubtless frequently happen that the director,
whose judgment because of his superior knowledge,
power of perception, and experience in the corporate af-
fairs, would carry the greatest weight in the delibera-
tions, would, through lack of notice, be absent, and the
other directors deprived of the benefit of his arguments.
There are other reasons why personal notice must be
given to the directors of all meetings of the board, for
which the time and place of holding the same are not
stated in the by-laws or rules of the corporation. If the
law were otherwise, the interests and rights of the minor-
ity would be subject to great abuse, and even those of the
majority would not be safe; for, where the minority
would constitute a majority of a quorum, they might give
notice to a bare quorum, and at a meeting so called
change the entire policy of the majority, and transact
business which would destroy the best interests of the
corporation. This sequence was clearly stated by Mr.
Justice Brewer in *Paola & F. R. Ry. Co. v. Anderson Co.
Com'rs*, 16 Kan. 309, where he says that, if the rule as to
notice were otherwise, then, in a "body composed of
twelve members, a quorum of seven could act, and a ma-
jority of that quorum—four—could bind the body. An
unscrupulous minority of four, by withholding notice to
five, might thus bind both the body and the corporation."
While, however, the general rule is that every director,

under such by-laws as the one in question herein, must have notice of the time and place of every meeting of the board, still there may be exceptions, as where such an emergency exists as justifies immediate action on the part of the board, and the giving of notice to all the members is not practicable, or where a director should secrete himself in order to prevent a meeting, or is beyond the reach of notice; and there may be other instances where the giving of notice to every director would not be practicable, and a lack of notice would be excusable. In such cases the rule cannot be permitted to be used as a weapon to prevent the transaction of corporate business, and thereby defeat the end and object for which the corporation was created. The general rule that notice must be given in some way to all directors of meetings of the board, where the by-laws and rules of the corporation do not provide the time and place of meeting, in order to render them valid, is well settled. In *Simon* v. *Sevier Ass'n*, 54 Ark. 58, it was said: "No director is required to attend a meeting of directors held without authority. Every one of them is entitled to vote and be heard in all the proceedings of the board. The shareholders in the corporation are entitled to the influence and advice of every director in the managment of their affairs. Hence, in order to accomplish the object for which each director was elected, a mere majority of the directors cannot constitute a majority of the board for the transaction of business unless they meet according to, and by authority of, the by-laws or rules of the corporation, or are called together upon due and legal notice given to all of them. Assembled in any other manner, they cannot act as a board, but as individuals, and such acts are not the acts of the corporation." 5 Thomp. Corp. § 6176; 1 Mor. Priv. Corp. § 532; 1 Beach, Priv. Corp. § 279; *Bank* v. *Mc-*

*Carthy*, 55 Ark. 473; *Stow* v. *Wyse*, 7 Conn. 214; *Farwell* v. *Copper Works*, 8 Fed. 66; *Doernbecher* v. *Lumber Co.* (Or.), 28 Pac. 899; *Wiggin* v. *First Baptist Church*, 8 Metc. (Mass ) 301; *Harding* v. *Vandewater*, 40 Cal. 77; *Doyle* v. *Mizner*, 42 Mich. 332.

Appellants cited the cases of *Edgerly* v. *Emerson*, 23 N. H. 555, and *Bank* v. *Flour Co.*, 41 Ohio St. 552, which hold that, if a quorum of directors meet and unite in any determination, the company is bound thereby, though the absent creditors had no notice; but these cases are evidently opposed to the great weight of authority, and we therefore decline to follow them. In the case at bar it is shown that all the directors of the corporation were summoned to Salt Lake City to attend a meeting to be held on September 20, 1894, for the purpose of transacting the business and straightening up the affairs of the corporation. It was found that the $100,000 borrowed previously, on June 1st, had been expended, but the company's plant had not been completed as had been anticipated. The corporation was $50,000 in debt, and money was needed to pay for labor, machinery, etc.; and, it would seem, certain persons were to advance the money. On September 20th, pursuant to call, the directors held a meeting, all being present, and, upon transacting the corporate business, adjourned. At that meeting Saks was authorized to borrow $10,000 for the use of the corporation, of which, it appears, the plaintiff paid $2,500, and, after guarantying, with two others, the payment of the $50,-000 debt, on September 21, 1894, started for Chicago, and afterwards went to New York city. Directors Green and Mears resigned, and their places were filled by others. On September 24, 1894, David May, Andrew Saks, and J. E. Shoenberg, being a quorum of the directors, held a special meeting, as shown by the evidence, without any

notice whatever to the absent members, or the existence of such an emergency as would excuse notice, and at such meeting the trust deed here under consideration was authorized, and then executed.   The directors holding this meeting knew where the plaintiff was going, but nevertheless failed to notify him of the meeting, which was held but three days after his departure, and but four days after the regularly convened meeting.   In the trust deed, Saks and May preferred themselves, for the sum of $50,-000, over the creditors secured by the trust deed of June 1, 1894, which was unrecorded; and yet there appears to be nothing to show that the corporation owed them anything.   At the same meeting these directors also transferred to the trustee in the trust deed 99,997 shares of the capital stock of the Utah Mining Company, as further security.   All the parties to the trust deed of September 24, 1894, and the directors who authorized its execution, knew at that time of the unrecorded trust deed, and were aware of its terms and conditions.   Further record reference respecting the meeting and trust deed here under consideration would seem useless and unimportant, because the inevitable conclusion to which reflection upon the facts and circumstances shown by the record leads is that the meeting of September 24, 1894, falls within the rule above considered, and therefore, for lack of notice to the absent directors, was unlawfully convened; that all the acts done by the directors at that meeting were without force or effect; that the trust deed and transfer of the mining stock of that date are, ab initio, null and void.

As to the second proposition of respondents, the fact that the corporation was insolvent when the trust deed was authorized and executed, alone, would not per se render that instrument void.

Having reached the conclusion stated above, it becomes

unnecessary to discuss the question of fraud. It suffices to say in relation thereto that the transaction which culminated in the execution of the second trust deed and transfer of the stock was, under the doctrine of *Mercantile Co.* v. *Mt. Pleasant Equitable Co-operative Inst.*, 12 Utah, 213, also fraudulent. Nor is it necessary to discuss any of the other questions presented in the record. The decree entered by the learned court appears to dispose of the various claims against the corporation in a lawful manner, and upon careful consideration we are not inclined to disturb that decree. The judgment is affirmed.

ZANE, C. J., and MINER, J., concur.