JOSEPH HATCH, Respondent, v. THE LUCKY BILL MINING COMPANY, a Corporation, Appellant.

No. 1403.     (71 Pac. 865.)

1. Mining Corporations:     Sale of Stock:     Assessments: Irregularities: Acquiescence.

Where a corporation acts within the scope of its general powers, and such acts are irregular, and performed in a manner not authorized by its charter, but are neither criminal, opposed to good morals, nor against public policy, they are voidable only, and a stockholder aggrieved thereby may acquiesce in and ratify what has been done, or may disaffirm and repudiate the voidable proceeding within a reasonable time.

2. Same.

A stockholder of a mining corporation, whose duty it was, as president, director, and business manager, to see that assessments on stock were regularly made and collected, and who knew that it was the uniform practice of the company to levy assessments though a majority of the stock was not represented at the meetings, and though small amounts of previous assessments remained uncollected, could not, after his own stock had been sold under such assessments, complain of their irregularity.

3. Same: Holdover Directors: Powers.

Holdover directors of a corporation are still in office, and qualified to act, until their successors are elected and qualified.[1]

---

[1] Schwab v. Mining Company, 21 Utah 258; 60 Pac. 940, distinguished.

**4. Same: Failure to File Oath: Effect.**

Where directors of a mining corporation had taken and subscribed to, but not filed, their oaths, as required by Revised Statutes 1898, section 317, an assessment on stock made by them will not be set aside, no one appearing to have been misled or injured by the irregularity.

**5. Same: Directors' Meeting: Notice.**

An assessment on the stock of a mining corporation at a meeting at which but four of the seven directors were present, no notice thereof having been given to the absentees, was void, and stockholders whose stock was sold under such assessments were entitled to recover, unless estopped by acquiescence or laches.[2]

**6. Same: Facts Held to Establish Estoppel.**

Stockholders of a mining corporation whose stock had been sold under void assessments, but who, with full knowledge of the irregularity, made no objection for more than ten months after the last sale, and who repeatedly stated that they had abandoned the enterprise and acquiesced in the forfeiture, the stock meanwhile having been bought by innocent parties, were estopped from claiming that such sales were void.[3]

**7. Same: Assignee Estopped.**

One who procured the assignment of mining stock with full knowledge of facts estopping the owners from asserting that a sale thereof to pay assessments was void, was also estopped from making such claim. BASKIN, C. J., dissenting.

(Decided March 25, 1903.)

Appeal from the Third District Court, Summit County.— *Hon. S. W. Stewart,* Judge.

Action to have reissued and restored certain shares of the capital stock of the defendant corporation sold for delinquent assessments and bought in by the defendant. From a decree in favor of the plaintiff, the defendant appealed.

REVERSED.

---

[2] Singer v. Manufacturing Company, 17 Utah 143; 53 Pac. 1024; 70 Am. St. Rep. 773; Schwab v. Mining Company, 21 Utah 258; 60 Pac. 940.

[3] Raht v. Mining Company, 18 Utah 290; 54 Pac. 889.

*Andrew Howat, Esq.,* for appellant.

Independently of any statute of limitations, courts of equity uniformly decline to assist a person who has slept upon his rights and shows no excuse for his laches in asserting them.   Nothing can call forth a court of equity into activity but conscience, good faith and reasonable diligence; where these are wanting the court is passive and does nothing.   Laches and neglect are always discountenanced.   Harwood v. Railroad Company, 17 Wall. 78, 81.   Speidel v. Henrici, 120 U. S. 377, 387; Rabe v. Dunlap, 51 N. J. Eq. 40, 46; G. W. Mining Co. v. W. of A. M. Co., 14 Col. 90, 95.

A party who makes an appeal to the conscience of the chancellor should set forth in his bill specifically what were the impediments to an earlier prosecution of his claim. Landsdale v. Smith, 106 U. S. 391; Olden v. Hubbard, 34 N. J. Eq. 85.

Where the suit is one that would be barred by laches, but for reasons excusing the delay, the complainant is required to state in his bill the facts and circumstances on which he relies to repel the presumption of laches.   Story Eq. Plead., secs. 484, 503, and note; Lansdale v. Smith, 106 U. S. 391; Olden v. Hubbard, 34 N. J. Eq. 85; Walker v. Ray, 111 Ills. 315; Haskell v. Bailey, 22 Conn. 569.

A great deal of confusion has arisen because of the failure of the courts and text-writers to observe the distinction between acts and contracts that are void and those that are voidable only.   No contract or transaction is absolutely void so that no rights can be acquired thereunder unless it is in violation of the criminal law, is against good morals or against public policy.   When the only rights affected are the rights of individuals and not of the public generally acts and contracts, though in violation of the rights of individuals, are not void, but voidable only, and statutes that in terms declare certain acts to be void are usually construed so that the act is voidable

only, unless the public interests are affected thereby.   28 Am. and Eng. Enc. of Law. 473, 475; Endlich Interp. St., 268, 271; Ewell v. Daggs, 108 U. S. 148; Pearsoll v. Chapin, 44 P. A. St. 7; Schwab v. Mining Co. (Utah), 60 Pac. 940; Anderson v. Roberts, 18 John. 527-8; Bennett v. Mattingly, 11 N. E. 792; Kearney v. Vaughan, 50 Mo. 287; Allis v. Billings, 6 Metc. 417; Beecher v. Marq. & Pac. R. M. Co., 45 Mich. 107; Van Schaack v. Robbins, 36 Iowa 201.

If the property is of a speculative or precarious nature it is the duty of one complaining of fraud or other wrong, depriving him of an interest therein, to assert his claim at the earliest possible time, and if he fails to do so he will be guilty of laches and will be estopped from thereafter asserting his claim.   Attwood v. Small, 6 Clark & F. 356; Pollard v. Clayton, Kay & J. 480; Raht v. Mining Co., 18 Utah 290, 301; Twin Lick Oil Co. v. Marbury, 91 U. S. 587, 592; Johnson v. Standard Mining Co., 148 U. S. 360; Penn., etc., Ins. Co. v. Austin, 168 U. S. 685; Curtis v. Lakin, 94 Fed. 251, 255; Sayre v. Citizens G. & L. Co., 69 Cal. 207, 214; Germantown, etc., Ry. Co. v. Fitler, 60 Pa. St. 124, 133, S. C. 100 Am. Dec. 546-51; Kent v. Quicksilver Mining Co., 78 N. Y. 159, 187, 188; G. W. Mining Co. v. Mining Co., 14 Col. 90, 94, 98, and cases cited.

*Frederick A. Sweet, Esq.,* and *Albert R. Barnes, Esq.,* for respondent.

The section of the statute of limitations that has application to this suit is subdivisions 3 and 4, section 2877, Revised Statutes of Utah.   It provides a period of three years in which such an action may be brought.   The contention of counsel for respondent is, that there is no such thing in law or in equity as laches where an action is brought any time before the period provided by the statute has had time to run; that nothing short of an equitable estoppel will bar the plain-

tiff of relief.    Under the code we have but one action for the redress of private wrong and the statute of limitations has general application to all without regard to whether they are equitable or legal in their character, and in those states where the statute has not been made expressly applicable to equitable actions—as has been done here—courts of equity will, by analogy regard the statute of limitations that will bar the legal action as absolutely binding upon them.    Love v. Watkins, 40 Cal. 547, 567-8-9-70.    Ormsby v. Vermont Copper Co., 56 N. Y. 623; White v. Sheldon, 4 Nev. 739; Kane v. Bloodgood, 7 Johns. Chan. 90; 11 Am. D. 417; Lang Syne M. Co. v. Ross, 18 Pac. 358-63; 19 Am. St. Rep. 337-344; Boyd v. Blankman, 29 Cal. 20-44; Gilmer v. Morris, 80 Ala. 78; 60 Am. Rep. 90-1; Lux v. Haggin, 69 Cal. 266-7; Met. Bank v. Despatch Line, 149 U. S. 448; Donn v. Stotesbury, 26 Pac. 333.

## STATEMENT OF FACTS.

Plaintiff brought this action to have reissued and restored to him 36,313 2-3 shares of the capital stock of the defendant corporation, which are claimed by him and his assignors, which stock was sold for delinquent assessments, and bought in by the defendant company. The complaint contains three causes of action.    The first is to recover 15,761 2-3 shares, sold for the twenty-eighth assessment; the second is to recover 10,650 shares, sold for the twenty-ninth assessment; and the third is to recover 9,902 shares, sold for the thirty-first assessment.

Defendant company was incorporated March 26, 1888, with a capital stock of 120,000 shares. The only assets of the company at the time of its incorporation were some undeveloped mining claims near Park City, Utah. The company never sold any ore, and the only means it had of raising money for the development of its mining claims was the sale of treasury stock and the levying of assessments on the

stock outstanding. The articles of incorporation provide that an assessment shall not be levied except by a majority of the board of trustees, and not by them unless they personally or by proxy, at the time of such levy, represent a majority of the stock of said corporation, and that no assessment shall be levied while any portion of any previous assessment remains unpaid. Plaintiff, who was a director from June 12, 1892, to June 11, 1900, participated in all meetings at which assessments were levied from and including the eighth (held September 22, 1892) down to and including the twenty-seventh (held September 3, 1897). During the greater portion of this time he was president, and for three years business manager, of the corporation. Printed notices of the assessments were mailed to the address of each stockholder by the secretary of the company, and duly published in two newspapers of general circulation. The notices of sale were also published, and were in all respects regular. In addition to the notices thus given, the plaintiff and certain of his assignors, who owned and represented in the aggregate nearly all of the stock sued for, had actual notice of these assessments before the sales took place. The company was heavily involved in debt. One of its principal creditors was A. Hatch & Co., of Heber City, of which plaintiff was manager. In January, 1901, defendant company gave a mortgage upon all of its mining claims and personal property to secure a loan of $1,500 to pay an indebtedness that was incurred while plaintiff was a director and its business manager. In February, 1901, third parties, who were in no way connected with the company, consulted its secretary, examined the stock ledger, and employed an attorney, who examined into the affairs of the company, and found, according to the information thus obtained, that there were over 69,000 shares of stock outstanding and 50,000 in the treasury. These parties, relying upon the information thus acquired, and without any knowledge respecting the claims made by plaintiff and his

assignors over the treasury stock, purchased 41,000 shares of the outstanding stock, paying therefor $15,000. The record further shows that these parties would not have paid this price had they believed that any of the stock represented as treasury stock belonged to individuals. Defendant pleaded laches and acquiescence on the part of plaintiff and his assignors. The court found the issues in favor of plaintiff, and entered a decree as prayed for. Defendant appeals.

McCARTY, J., after stating the foregoing facts, delivered the opinion of the court.

Respondent contends that the assessments under consideration were absolutely void, and that no right or legal claim was or could be acquired by the company to the stock sold under and by virtue of them, because the directors levying the assessments did not represent a majority of the stock, and because previous assessments had not all been collected, and that assessments Nos. 29 and 31 are void for the further reasons that some of the directors, at the time the levies were made, had not filed their oath of office in the office of the county clerk, and others of the directors were not notified of the meetings and had no opportunity to be present.

Appellant, on the other hand, contends that, while these irregularities might have rendered the sales voidable at the option of the stockholders injuriously affected thereby had they acted with promptness, and proceeded to have the sales set aside before the rights of innocent third parties became involved, they are not void, as the levying of assessments is one of the general powers of a corporation.

The rule is elementary that when a corporation acts within the scope of its general powers, and such acts are irregular, and performed in a manner not authorized by its charter, but are neither criminal, opposed to good morals, nor against public policy, they are not void, but voidable only, and a stockholder aggrieved thereby may acquiesce

in and ratify what has been done, or may disaffirm and repudiate the voidable proceeding. It is incumbent upon him, however, if he does not intend to be bound by the act, to demand reparation, and, if it is denied, to institute proceedings for redress within a reasonable time after he learns of the injury done him. The question as to what is a reasonable time can not be decided by the application of purely legal principles, but must necessarily be determined by the particular facts and circumstances of each case. What would be a reasonable time in which to commence an action in one case under a given state of facts might be regarded as inexcusable neglect in another, where the facts and circumstances are entirely different.

It is conceded that the directors present at the meetings when the assessments were levied did not represent a majority of the capital stock of the corporation. Counsel for the appellant contends that the provision of the articles of incorporation prohibiting the directors from levying assessments unless they, at the time of such levy, represent a majority of the stock of the corporation, is in conflict with the spirit and intent of the statutes of this State regulating and defining the powers of corporations. This question is not necessarily involved, as the determination of the decisive issues in this case does not depend upon the validity or invalidity of the provision of the articles of incorporation in question; therefore we refrain from expressing an opinion on this point.

It also appears from the record that there were small amounts of previous assessments uncollected. This appears to have been the uniform practice of the company almost from the time of its organization. During the time plaintiff was an officer of the company there were twenty-two assessments levied, and with but very few exceptions he was present, and took part in the meetings as director, president, and business manager, and at no time did the directors present represent a majority of the stock, and at the time of

each levy there were small amounts of each of the previous assessments remaining uncollected. The plaintiff must have known of these alleged irregularities, as it was his duty as an officer to know and understand the manner in which the business affairs of the company were being conducted. It was also a part of his duties as president, director, and business manager to have seen to it that the company took the necessary steps to collect all the assessments that were levied while he was superintending and managing the business affairs. During all this time he made no attempt to correct these irregularities, and up to the commencement of this action made no objection to the assessments under consideration on either of these grounds. Therefore he can not now be heard to complain of acts and omissions of the company which were largely due to his own negligence, and for which he is in a measure responsible. 2 Cook on Corp., 730, 731.

Respondent further objects to assessment No. 29 on the ground that the five directors who levied the assessment were not qualified to act as such, because they had not taken and filed their oath of office in the office of the county clerk. Three of the directors were holdovers; that is, they were elected and took their oaths of office in 1897, and had continued to act as directors until after the levy under consideration was made. The other two directors had taken their oath, but had not filed it. It is well settled that a director once elected may continue to act until his successor is elected and qualified. Therefore the three holdover directors were still in office, and qualified to act. 2 Cook on Corp., 624; 2 Morawetz on Corp., 640. Respondent, in support of his contention on this point, relies upon and cites the case of Schwab v. Mining Company, 21 Utah 258, 60 Pac. 940, recently decided by this court. In that case, a short time before the levy was made, three of the five directors were elected for the first time, and at the time of the levy had not taken the oath required by section 317, Revised Statutes 1898, which

reads as follows: "Before the first or any other officers shall enter upon the duties of their respective offices, they shall take and subscribe an oath of office, that they will discharge the duties of such office to the best of their judgment, and that they will not do nor consent to the doing of any matter or thing relating to the business of the corporation with intent to defraud any stockholder or creditor or the public, which oaths shall be filed in the office of the county clerk." It will be readily observed that the facts in the two cases are not at all similar. In the case of Schwab v. Min. Co., supra, a majority of the directors had not qualified by taking the oath required by section 317, Id., whereas in the case under consideration the directors had taken the required oath, but some of them, at the time of the levy, had not filed it in the office of the county clerk. As stated in the case above cited, the object of the statute is to protect the stockholders and all parties doing business with a corporation against fraud and dishonesty on the part of its officers by requiring such officers to perform their duties under the high sanctions and obligations of an oath. The filing of the oath does not make it any more binding, nor would the fact that it is filed be likely to add to its influence, on the directors when in the performance of their duties. The object of the statute in requiring the oath to be filed undoubtedly is to give notice to all parties who may have dealings with a corporation that its officers have taken and subscribed to an oath "that they will not do nor consent to the doing of any matter or thing relating to the business of the corporation with intent to defraud any stockholder or creditor or the public." While this provision of the statute is an important one, and should be observed and followed, yet when as in this case, the oath was in fact taken and subscribed to by the directors with a bona fide intention of filing it later, and which was done, we are of the opinion, and so hold, that the irregularity is not of sufficient importance to authorize a court of equity to set aside the proceedings; and especially

so when, as in this case, no one appears to have been misled or injured thereby.

Respondent's objections to assessment No. 31 present a more doubtful question, and one not so easily disposed of.

There were present at the meeting when this levy was made four of the seven directors who had just been elected. No notice of the meeting was given or sent to the three directors who were absent. The directors of a corporation are its agents, and are elected by the stockholders to supervise, direct and manage its affairs. The stockholders are entitled to the benefit of the experience, judgment, and influence of each director at the board meetings, and, in order to insure this, each director must be given an opportunity to be present. Singer v. Salt Lake Copper Mfg. Co., 17 Utah 143, 53 Pac. 1024, 70 Am. St. Rep. 773; Morawetz, Priv. Corp., 531, 532. If one or more of them are prevented from being present because of a failure to give the required notice, the directors present, even though they are a majority of the entire board, have no authority to act as such (2 Cook Corp., 129), and any stockholder whose interests are affected injuriously by any proceeding of theirs while assuming to act as a board of directors may challenge such proceedings, and have them set aside, provided, of course, he has not acquiesced in what has been done, is not guilty of laches, and the rights of third parties are not involved (Schwab v. Min. Co., supra). Applying this rule to the facts in this case, so far as they relate to assessment No. 31, we are forced to the conclusion that the directors present acted without authority in making the levy, and that the stockholders whose stocks were sold under this assessment are entitled to recover, unless acquiescence or laches on their part have been shown and established by the evidence in the case.

These defenses having been pleaded to each of the causes of action, we will now determine to what extent they affect the case in its entirety. Plaintiff stated at a stockholder's

meeting held in June, 1899, that he would like to dispose of his stock at two cents per share if he could get some "greenhorn" to take it, which tends to show that he placed but little value, if any, upon it. When he received notice of the twenty-eighth assessment, he wrote to the secretary of the company, requesting him to apply a credit he (the plaintiff) had with the company on the assessment, and to sell sufficient of his stock to pay the balance, which was done. He made no objection to paying this assessment, and at the trial of the case testified that he wanted to pay it. L. E. Riter, one of plaintiff's assignors, was the owner of 4,500 shares that were sold for assessment No. 28. The record shows that at the request of himself and other stockholders whose stock was advertised the sale was postponed for thirty days. A report showing the financial condition of the company was prepared and submitted to them. Upon looking the report over, Riter stated he would not pay the assessment; that he guessed he would let it go. He made no objections whatever to the assessment or the sale. When the twenty-ninth assessment was levied, plaintiff was still a director, and the only objection he made to it was that the secretary had received a credit of $300 for services rendered the company, which he (the plaintiff) claimed to be excessive. Six months after the sale of his stock he stated, referring to the defendant company, "I am not interested in it any longer;" that he let his stock go for assessments; and again: "I don't consider it worth a d——n anyway. I never got anything out of it anyhow but a few crystals"—meaning water crystals. On another occasion he stated that he hadn't anything to do with the Lucky Bill (defendant company); that he had let it drop. About November, 1900, and more than a year after his stock was sold, there was a rich strike in the Quincy, a mine situated in the neighborhood of the Lucky Bill mining claims, which gave to the stock of the defendant company a speculative value. Two or three months after the strike in the Quincy, plaintiff

offered to pay the back assessments and redeem his stock, but the offer was declined by defendant.

After the commencement of the action, Joseph 'Hatch, Jr., son of plaintiff, and one of his assignors, in a conversation with George Hasson, who was at one time a stockholder in the company, made the following statement: "Q. Joe, how has the old man (referring to plaintiff) fixed up with the Lucky Bill? A. I don't know. Q. What have you done with your stock? A. I haven't paid any assessments. I suppose it's gone. Q. Isn't it a fact that your stock is in this suit? A. I don't know. Q. Now, what's the matter with your people anyway? A. Well, you fellows have got people with money in here, and I guess the old man is trying to bleed them." He also stated that he "didn't consider his stock of any value;" that he "didn't consider it worth the assessment." The stock that was sold for the thirty-first assessment was assigned to plaintiff by W. W. Hall, S. T. Ricketts, and S. D. Evans. Hall was a witness, and testified, in substance as follows: "I sold a small number of shares in the Lucky Bill Mining Company. I received notice of the assessment. I didn't pay the assessment. I didn't intend to. I presume it was sold. I sold the stock to Mr. Sweet [plaintiff's attorney]. I told him he could have it at his own price. I knew of the assessment, and knew the stock was going to be sold. I didn't pay any attention to it. I said I wouldn't pay any more assessments, and let it go. I simply abandoned it. I didn't consider the stock as being worth the assessment at the time it was levied and when it became due." S. D. Evans testified in part as follows: "At one time I was a stockholder in the Lucky Bill Mining Company. I parted with these certificates (representing about 8,000 shares of stock) April 21, 1901. The negotiations were had with Mr. Sweet. He wanted me to join in a suit against the company. I rather objected. Stated that I didn't believe I wanted to join in that, but that I would sell.

25 Utah—27.

I controlled other stock besides my own — Ricketts' 500 shares and Officer's. I disposed of the stock to Mr. Sweet, and. said to him: 'Now, this transaction is between you and me, and you understand that I' place no value on these certificates, so far as the company is concerned.' I told him I didn't consider the stock valid stock. That I had consented to the assessment, and refused to pay it. I had heard of some irregularity. I had notice of the assessment, but I didn't pay it, because I 'didn't want to. I didn't believe it was worth paying any money on. That was one reason, and another reason was that I didn't have the money just at the time. These were the only reasons that I had for not paying the assessments. I knew the sale was being made. I had legal notice that it would occur at such a time. I preferred that it should be sold, rather than pay another assessment."

Where the property involved is of a speculative character, and is constantly changing hands and fluctuating in value, it is incumbent upon a party complaining of fraud or other wrong by which he is deprived of his property to be prompt in instituting proceedings for its recovery. He can not remain passive, with full knowledge of what has been done, and when, through the energy, risk, and expense of others connected with the business or enterprise, the property suddenly becomes valuable, compel its restoration to him. "It is also settled that the stockholder must take the requisite proceedings to be relieved against the company at once upon his discovery of the truth. Any unreasonable delay, and any act on his part tending to show acquiescence, will debar him of relief." Pom. Equity Jur., 881; 2 Cook on Corp., 732; Raht v. Min. Co., 18 Utah 290, 54 Pac. 889; Pollard v. Clayton, 1 K. & J. 480; Twin Lick Oil Co. v. Marbury, 91 U. S. 587, 23 L. Ed. 328; Johnson v. Standard Min. Co., 148 U. S. 360, 13 Sup. Ct. 585, 37 L. Ed. 480; Penn., etc., Ins. Co. v. Austin, 168 U. S. 685, 18 Sup. Ct. 223, 42 L. Ed. 626; Curtis

v. Lakin, 36 C. C. A. 222, 94 Fed. 251, 255; Sayre v. Citizens' G. & L. Co., 69 Cal. 207, 7 Pac. 437, 10 Pac. 408.

That the officers acted in perfect good faith, and as they believed for the best interest of the company and its stockholders, is not questioned. The plaintiff and his assignors being fully advised of the assessments and sale of their stock, and with every opportunity to know and understand the manner in which they were made, if they desired to recover their stock, they should have commenced proceedings within a reasonable time. Instead of doing so, they waited nearly three years after the first, nearly eighteen months after the second, and more than ten months after the last sale before commencing suit. In the meantime the other stockholders continued to take the risks of their precarious and hazardous enterprise. They paid these and other assessments, aggregating 7 1-2 cents on each share of stock, and thereby enabled the company to meet its obligations and prevent its property from being sacrificed to pay debts. Innocent third parties, relying upon the books and records of the company, which showed the stock in question to be treasury stock, invested $15,000 in the purchase of stock outstanding. Under these circumstances, to restore to plaintiff the stock sold for the twenty-eighth and twenty-ninth assessment would be an injustice to the other stockholders, and unequitable in principle. The stock involved in this suit that was sold for the thirty-first assessment was owned and controlled by W. W. Hall and S. D. Evans. Their evidence shows conclusively that Evans, who owned and controlled all but 102 shares of this stock, was advised of some irregularity in the assessment, and that neither of them made any objection to it, but on the contrary, acquiesced in the sale, and renounced and abandoned all claims to the stock, and all claims they may have had against the company because of its forfeiture. The plaintiff procured the assignment of this stock with full knowledge of these facts; hence is bound by them. 2 Cook on Corp., 733.

It is evident that neither the plaintiff nor his assignors ever had any intention or disposition to question the regularity of the assessments until after conditions had changed, and the stock, which was without any market value at the time it was bought in by the company, had advanced to forty cents per share.

We are of the opinion, and so hold, that plaintiff is not only barred by laches from asserting any claim to the stock, but by the repeated declarations of himself and assignors to the effect that they had voluntarily abandoned the enterprise they acquiesced in the forfeiture of their stock.

The case is reversed, with directions to the trial court to dismiss the action. Costs to be taxed against the respondent.

BARTCH, J., concurs. BASKIN, C. J., dissents.