[No. 8785.   In Bank.—March 30, 1886.]

SAMUEL SAYRE, APPELLANT, v. CITIZENS' GAS LIGHT AND HEAT COMPANY ET AL., RESPONDENTS.

69  207|
96  330|

EQUITY — ACTION TO COMPEL TRANSFER OF STOCK — ASSESSMENT SALE — ACQUIESCENCE — DELAY. — The action was brought to compel the individual defendants to transfer to the plaintiff certain shares of stock of the Capital Gas Company, and to pay to him the dividends received by them thereon, and for other relief.   The plaintiff had been the owner of an equal number of shares of stock in the Citizens' Gas Light and Heat Company, which corporation had been consolidated with the Capital Gas Company.   Prior to the consolidation, his stock had been sold in

satisfaction of an assessment levied thereon, and purchased by the individual defendants.  On a review of the evidence, *held*, that the plaintiff had acquiesced in the sale, and had lost his right to equitable relief by reason of his delay.

CORPORATION — ASSESSMENT ON STOCK FULLY PAID. — Under the act of March 26, 1866, the capital stock of a corporation, which has been fully paid for, is assessable.

APPEAL from a judgment of the Superior Court of the city and county of San Francisco, and from an order refusing a new trial.

The facts are stated in the opinion of Mr. Justice Ross in Department One.

*George Cadwalader*, and *Stanly, Stoney & Hayes*, for Appellant.

*McAllister & Bergin*, for Respondents.

MYRICK, J. — An opinion was filed by the court, in Department, June 23, 1885.  After hearing by the court in Bank, we are satisfied of the correctness of the views expressed in that opinion.  As to other points presented, but not referred to in the opinion, we will say we see no error.  The court below was correct in its views that the act of March 26, 1866, authorized an assessment on full-paid stock.

The contract between Morris, the assignor of the plaintiff, and the Citizens' Gas Light and Heat Company, did not call for unassessable stock, even if it should be conceded that under the laws of this state a corporation is authorized to issue stock upon which no assessment can be levied.

The judgment and order are affirmed.

SHARPSTEIN, J., MORRISON, C. J., ROSS, J., McKINSTRY, J., and McKEE, J., concurred.

The following is the opinion in Department One above referred to: —

Ross, J.—This is a bill in equity, filed by plaintiff, to compel the defendants, Brown, Clark, Gallatin, Watson, Cummings, Stanford, Hopkins, Crocker, Huntington, and Miller to transfer to the plaintiff, as assignee of one Henry G. Morris, three thousand five hundred shares of the capital stock of the defendant, the Capital Gas Company, and to pay to him the dividends received by them thereon; to compel the Capital Gas Company to recognize such transfer and enter the same on its books, and to obtain judgment against the defendant, the Citizens' Gas Light and Heat Company, for eleven thousand nine hundred dollars.

From the findings of the court below, these, among other facts, appear: The Citizens' Gas Light and Heat Company was incorporated in January, 1872, with a capital stock of one million dollars, divided into twenty thousand shares, of the par value of fifty dollars each, and on the fourth day of October, of that year, entered into a contract in writing with one Henry G. Morris, of Philadelphia, by which the latter agreed to erect gas-works for the company in the city of Sacramento, within a stated time, in accordance with certain plans and specifications, in consideration of one hundred thousand dollars in money, and six thousand five hundred shares of the stock of the company, which consideration the company agreed to pay. Morris proceeded to and did construct the gas-works, but did not complete them within the time limited in the contract,—the works not having been completed until on or about February 4, 1874, whereas the time stipulated for their completion was September 1, 1873. The company paid Morris the one hundred thousand dollars, as provided for by the contract, and issued to him four thousand five hundred shares of its capital stock, and further advanced to him, to enable him to complete the works, other sums aggregating $41,371.33, which advances have never been repaid.

The original incorporators of the Citizens' Gas Light.

and Heat Company formed the corporation for the purpose of furnishing gas to the inhabitants of the city of Sacramento at cheaper rates than were then prevailing there, and took stock therein, paying therefor less than its par value. They supposed that they could issue and dispose of the stock at such prices as they might deem proper, and upon that understanding they took and paid for their respective shares at an agreed price,—the average being about eight dollars per share. They expected to raise the sum of one hundred thousand dollars and the funds necessary to start the works from the sale of stock, and did so. At the time the works should have been completed, as well as at the time they were in fact completed, the stock had no market value. There was then, and had been for years, in existence and in operation an incorporated company called the Sacramento Gas Company, whose stockholders consisted of wealthy and influential citizens of Sacramento and San Francisco, so that when the new company commenced operations it at once encountered active competition. By reason of this competition, the price of gas was reduced from time to time, and so reduced that both companies were losing largely. In conducting its business, the Citizens' Gas Light and Heat Company was compelled to expend large sums of money and incur large liabilities, in order to meet which it levied an assessment of $1.50 upon each share of its capital stock. The assessment was made in good faith, for the purpose of paying the proper and legal expenses of the corporation, in the exercise of the best judgment of its board of directors and under the advice of its counsel. The assessment was paid upon all of the stock by the holders thereof, except upon the stock of Morris. The assessment upon that was not paid. It was subsequently advertised for sale because of such non-payment, and at the appointed time, there being no other bid, it was bought in by the corporation. In this condition of affairs Morris came to

the state of California, when the officers of the corporation offered to allow him to retake the stock so sold upon his payment of the amount of the assessment thereon and the amount of the advances made to him by the company, which offer was refused, he saying the stock was not worth redeeming; and after some unsuccessful efforts to adjust their differences, he left the state and has never returned. Before the levy of the assessment, however, Albert Gallatin, on behalf and by authority of the Citizens' Gas Light and Heat Company, went to Philadelphia, and there endeavored to have Morris pay the company the amount of money advanced to him over and above the contract price, which the company claimed to be about forty-six thousand dollars. This Morris declined to pay, but offered to pay thirty thousand dollars in settlement. This was refused; so the attempted adjustment in Philadelphia failed, as did the subsequent one in California, already referred to.

After Morris's departure from California, the competition between the Citizens' Gas Light and Heat Company and the Sacramento Gas Company continued, at heavy loss to both companies, until finally, in the year 1875, the two corporations agreed to consolidate their interests. To effect such consolidation it was necessary that the Citizens' Gas Light and Heat Company should discharge all of its debts and liabilities. It was then indebted to the Savings and Loan Society, a corporation, in the sum of sixty-five thousand dollars, which sum was secured by a mortgage on the property of the Citizens' Gas Light and Heat Company. To pay this, as well as other indebtedness of the company, the six thousand five hundred shares of the Morris stock, which was bought in by the company at the sale for the non-payment of the assessment thereon, was sold by the corporation at eleven dollars per share, as follows: To R. C. Clark, two hundred shares; to A. Gallatin, one hundred and fifty shares; to R. J. Watson, one hundred and fifty-five shares; to

C. H. Cummings, two hundred shares; to E. H. Miller, Jr., one hundred and ninety-five shares; to Mrs. L. Miller, two hundred shares; to John Miller, three hundred shares; to Frank Miller, one hundred shares; to Leland Stanford, one thousand two hundred and fifty shares; to Mark Hopkins, one thousand two hundred and fifty shares; to C. Crocker, one thousand two hundred and fifty shares; and to C. P. Huntington, one thousand two hundred and fifty shares. The stock then had no market value, and the only inducement to the purchasers to buy was the then proposed and contemplated consolidation of the two companies, without which the stock could not have been sold at any price, and Morris knew that such was the then condition of the stock. The consolidation was subsequently effected by the organization of a new corporation, called the Capital Gas Company, with a capital stock of two million dollars, divided into forty thousand shares, of the par value of fifty dollars each, one half of which was to be issued to the stockholders of each of the old companies, in proportion to their respective interests therein, upon the conveyance to the new corporation by the old ones of all their respective property and effects, freed of encumbrances. This arrangement was carried out, and because of the consolidation and the removal of competition, the stock of the new company attained a market value of from eight dollars to eleven dollars per share, those being the extreme figures from the time of the consolidation until the commencement of the present action. The court below further found that Morris, although cognizant of all the facts, purposely refrained from the assertion of any right to the stock in question after the same was sold for nonpayment of the assessment, and until after the consolidation of the old companies and the formation of the new imparted to the stock of the latter some market value, when the present suit was commenced by the plaintiff, who is a clerk in the employ of Morris, and

sues as his assignee. The court below further negatives all of the allegations of fraud contained in the bill.

The findings in some respects are earnestly challenged by appellants' counsel as being unsupported by the evidence, but whatever might otherwise be held in respect to the findings in some particulars, there can be no doubt that the court below was justified in finding that Morris knew of the assessment of his stock and its sale for non-payment of the assessment, and of the then condition and prospects of the company and its stock. If the assessment and sale were invalid, he then had the right to commence proceedings to vacate the assessment and sale, and recover his stock. The reason he did not do so is manifest from the evidence as well as the findings. By reason of the formidable competition that existed to the business of the company, the stock had little or no value, and the prospects of the company were poor. All of this he knew. When, after the sale, the company offered to return him the stock upon his payment of the assessment and the amount of the company's advances to him, he refused, saying the stock was not worth redeeming. If he had the right to repudiate the sale of stock upon the ground that it was not assessable, or for any other cause, was it not incumbent upon him to act with diligence? Could he acquiesce in the sale as long as the stock of the company was of but little value, but when, by the exertions of others, the consolidation of the company with a rival one imparted to the stock of the combined properties more value, come into a court of equity and claim an equivalent of the stock of the new company? We think not.

In the case of *Hayward* v. *National Bank*, 96 U. S. 611, certain mining stocks deposited by Hayward with the bank as collateral for a loan were sold by the bank to three of the bank directors, but at a price above the market rate and for a sum sufficient to pay the loan. Hayward was informed of the sale at the time, and did not

object. Subsequently the stock greatly enhanced in value, and then — about three years and a half having elapsed — Hayward filed a bill against the bank, asserting a right to redeem the stock, and praying for general relief. The court held that he was entitled to no relief, saying at the end of the opinion: "If Hayward was defrauded of his stock; if the title did not pass from him or the bank because of the peculiar relations which the purchasers held to him and the property; if he had the right originally upon any ground to repudiate the sale and reclaim the stock, — it was incumbent upon him, by every condition of fairness, to act with diligence, and before any material change in the circumstances and in the value of the stock had intervened. No sufficient reason is given for the delay in suing. His poverty or pecuniary embarrassment was not a sufficient excuse for postponing the assertion of his rights. He must be deemed to have made a final election not to disturb the sale of 1868, and a court of equity should not permit him, under the circumstances, to recall that election. Upon the grounds, then, both of acquiescence and lapse of time, he should be held to have forfeited all right to relief in a court of equity." The court further held that "the question of acquiescence or delay may often be controlled by the nature of the property which is the subject of litigation. A delay which might have been of no consequence in an ordinary case may be amply sufficient to bar relief when the property is of a speculative character, or is subject to contingencies, or where the rights and liabilities of others have been in the mean time varied. If the property is of a speculative or precarious nature, it is the duty of a man complaining of fraud to put forward his complaint at the earliest possible time. He cannot be allowed to remain passive, prepared to affirm the transaction if the concern should prosper, or to repudiate it if that should prove to his advantage"; citing Kerr on Mistake and Fraud, Bump's ed., pp. 302, 306; *Twin Lick Oil Company* v. *Marbury*, 91 U. S. 587.

These principles we think decisive of the case against the appellant. It becomes therefore unnecessary to decide other questions discussed by counsel.

Judgment and order affirmed.