NEW YORK AND EASTERN TELEGRAPH AND TELEPHONE COMPANY

*v.*

GREAT EASTERN TELEPHONE COMPANY et al.

---

DE ELBERT A. REYNOLDS et al.

*v.*

NEW YORK AND EASTERN TELEGRAPH AND TELEPHONE COMPANY.

[Decided March 2, 1908.]

1. While a corporation which has issued two certificates for the same stock may not assert the validity of one and the invalidity of the other, so that the rights of the holders cannot be settled in an action by the corporation, yet there is no objection to defining the relation of the holders to the corporation in an action by one of the holders to which the corporation and all claimants the stock are made parties.

**222**        CASES IN CHANCERY.

N. Y. & East. Tel., &c., Co. *v.* Great East. Tel. Co.        *74 Eq.*

2. Where a promoter to whom stock was issued agreed to hold part of it for a specified purpose, the corporation by issuing other stock in place of it, and recognizing the validity of the issue and subsequent transfers thereof, was estopped to deny its validity in the hands of a subsequent *bona fide* purchaser without notice of the equities existing in favor of the corporation or the promoter.

3. Where all of the capital stock of a corporation was issued and outstanding, one purchasing from a stockholder an old certificate in lieu of which new certificates had been issued did not become a stockholder.

4. A stock certificate is merely evidence, and does not itself constitute the right of a stockholder.

5. Where stock has been rightfully issued, even though nothing has been paid on it by the subscriber, it can only be forfeited in the mode prescribed by statute, and the procedure therein prescribed must be strictly followed.

6. Where the enterprise for the purpose of which a corporation was formed was dormant and nothing was being done in the way of construction, and none of the proper steps were taken to legally forfeit stock for non-payment of assessments, an attempted forfeiture of the stock and the issue of new certificates to the corporation's counsel in payment for a past-due indebtedness did not affect the rights of the original holder.

7. A *bona fide* purchaser without notice of shares of stock was unaffected by equities which might have affected the stock in the hands of an intermediate holder.

Heard on bills, answers, cross-bills, answers, replications and proofs in open court.

The two above-entitled cases were tried together. That in which the New York and Eastern Telegraph and Telephone Company is complainant is a bill setting out facts concerning the stock issues of that corporation and charging that certain certificates of stock thereof purchased by the defendants are not, in law, valid, and should not be held to entitle the holders to participate as stockholders in the corporation. The prayer is for an injunction to prevent the holders from acting as stockholders, and for a decree directing the surrender of the alleged void certificates for cancellation.

To this bill De Elbert A. Reynolds, the original purchaser; Edward M. Millard, to whom some of the stock was transferred, and the Great Eastern Telephone Company, for whom the alleged purchase was assumed to be made, were defendants.

A cross-bill was filed by the defendants in which the validity

FEBRUARY TERM, 1908.    223

*4 Buch.*    N. Y. & East. Tel., &c., Co. *v.* Great East. Tel. Co.

of the shares in question is asserted, and it is prayed that certain stock in the complainant company should be canceled, and that the stock held by the defendants should be recognized as valid, outstanding stock of the company.

In the other suit, that in which De Elbert A. Reynolds and others are complainants, it is charged that they are the holders of stock in the New York and Eastern Telegraph and Telephone Company, the complainant in the first-named suit (certain of their alleged holdings being the questioned stock) ; that the corporation is denying their rights, and it, together with the other persons, who are also denying their rights upon the assumed claim that the stock in question belongs to such other persons and not to the complainants, are made defendants. The prayer, broadly stated, is to establish the right of the complainants and invalidate the claim of the individual defendants as stockholders.

To this bill answers were filed by the several defendants.

Upon the issues thus raised the cases were tried together.

After the oral argument in court a conclusion was reached and stated, but the solicitor for the complainants in the second-named suit desiring to be heard upon a re-argument, the same was granted, and the conclusions hereinafter stated are not only the oral conclusions stated at the time of the trial, but the result of the court's determination after the re-argument.

*Messrs. Vredenburgh, Wall & Carey* and *Mr. De Fere* (of the New York bar), for the New York and Eastern Telegraph and Telephone Company.

*Mr. J. Merritt Lane* and *Mr. Vermilyea* (of the New York bar), for De Elbert A. Reynolds et al.

GARRISON, V. C.

Any doubt as to the jurisdiction of the court in the premises to settle the respective rights of the parties under the bill filed by the New York and Eastern Telegraph and Telephone Company is, I think, set at rest by the issues properly raised and to be determined in the bill filed by De Elbert A. Reynolds and others.

While it may be true that a corporation may not, where it has issued and recognized two certificates for the same holding, be heard to assert the validity of one and the invalidity of the other, and that the rights of the two holders may not be properly settled in such a suit, particularly as they are not here parties, there can be no question, in my view, that in the suit in which Reynolds is complainant, and in which he has brought in all of the holders of the disputed stock, it is proper to settle, as between these persons, their respective rights.

The New York and Eastern Telegraph and Telephone Company is a corporation of the State of New Jersey, incorporated in March, 1894. Its general purpose was to own and operate telegraph and telephone lines. Its authorized capital stock was composed of fourteen hundred shares. There were originally seven incorporators who took fifteen shares each. Subsequently, by appropriate action, they became entitled to take twenty-five more, making forty each. After that three more persons came in, and by appropriate action became entitled to take forty each. These ten, being each entitled to forty, held the four hundred shares initially issued.

A man named Mildenburg was the promoter of the corporation and rendered a bill to it, and it agreed to pay him for services and some property in the way of a franchise, which he transferred to or secured for it, by giving him one thousand shares of the capital stock of the corporation. These one thousand shares added to the four hundred shares above accounted for make the full authorized stock issue of the company.

Mildenburg agreed to give up seven hundred of these one thousand shares, and at first it was the understanding that each of the ten stockholders already mentioned should receive seventy shares out of these seven hundred, but afterwards it was agreed that they should only have fifty shares each, which would take up five hundred, and that the other two hundred shares remaining out of the seven hundred should belong to the company. These two hundred shares have been referred to as "treasury stock," but this was a mere term, because there was no direct, distinct understanding as to how the company was to derive the benefit from this stock. It was not determined whether Milden-

burg was to hold it and sell it for the company and turn the money in, or whether he was to hand it over to the company and it was to sell it, or what procedure should be adopted.

The only thing that was clearly agreed upon was that the stock was legally issued and belonged to Mildenburg before he parceled it out, and that two hundred shares of it should be so disposed of as to benefit the company.

With respect to certain of the stock thus parceled out Mildenburg's contention was—and it seems to have been acquiesced in by all the others—that fifty shares in the name of Rich, fifty in the name of Morris, fifty in the name of Noden and fifty in the name of Skinner were to go back to Mildenburg, they being dummies of his in this transaction. The method of parceling it out was to have Mildenburg endorse the power of attorney in the names of the various persons, but the stock was not delivered to these people nor was it then transferred into their names.

Some time in the year 1895 Mildenburg went to Europe and transferred the whole of these one thousand shares of stock which had been issued to him in twenty-five certificate lots, to Gustave A. Jahn, who was a stockholder of the corporation and a director therein. The powers of attorney on these shares were properly signed by Mildenburg.

On the 18th of November, 1895, and while Mildenburg was still in Europe, Jahn caused the company to issue to him a certificate for two hundred and twenty-five shares, to E. M. Millard one hundred shares, to James Ross fifty shares, to T. C. Millard fifty shares, to William J. Griffiths fifty shares, and to James McLaurin fifty shares. It was assumed that this issuance was in place of a like amount of stock previously represented in the one thousand shares issued to Mildenburg. It is with respect to one hundred and fifty of the shares represented in the certificate for two hundred and twenty-five shares thus issued to Jahn, and fifty of the shares represented in the certificate of one hundred shares issued to E. M. Millard, that the corporation complainant claims the issue is invalid, and that the individual complainant insists it is valid.

After Mildenburg's return and while he acted as secretary of the company these issues of stock made on the 18th of Novem-

226 CASES IN CHANCERY.

N. Y. & East. Tel., &c., Co. *v.* Great East. Tel. Co.        74 *Eq.*

ber, 1895, were constantly recognized as valid stock in the minutes of the company and in every other way in which stock can be recognized. Mildenburg himself, over his own signature as secretary, recognized the holders thereof as stockholders of record at dates subsequent to the 18th of November, 1895.

Either at the time that Jahn procured the issuance of the above designated stock, or at some subsequent period, he segregated from the one thousand shares of stock that had been issued to Mildenburg, and which he has in his possession, five hundred and twenty-five shares, which, it will be observed, is just the number that he had issued to himself, and the various persons as above enumerated; and these five hundred and twenty-five shares of the original stock issued to Mildenburg remained in Jahn's possession until at least two years before the bringing of this suit and after the death of Jahn.

The four hundred and seventy-five shares remaining out of the one thousand originally issued to Mildenburg, the five hundred and twenty-five shares issued on the 18th of November, 1895, and the four hundred shares of stock initially issued to the ten persons interested were deposited in the Hamilton Trust Company, in the borough of Brooklyn, New York, for purposes which are not germane to this suit. The four hundred and seventy-five shares were gotten out by Mildenburg, or on his order; the five hundred and twenty-five shares were gotten out either by Jahn or the persons in whose names they ran; and the four hundred shares were likewise withdrawn subsequently by those entitled to them.

In 1906, De Elbert A. Reynolds purchased, among other certificates of stock, the stock issued on the 18th day of November, 1895, and the first question which arises concerns the validity of two hundred of those shares, the contention of the complainant corporation, being as above stated, that one hundred and fifty thereof represented in the certificate for two hundred and twenty-five to Jahn, and fifty out of the one hundred issued to Millard, were the so-called "treasury stock," and that the issuance thereof to Jahn and Millard was invalid, and that the original certificates found in the possession of Jahn's executor or administrator should be recognized.

I find that the stock issued on the 18th of November, 1895, as aforesaid, is valid in the hands of Reynolds. I think it clear that, whether or not as against Mildenburg or the company, Jahn had a right to do what he did, that which Jahn did with the assent of the corporation and with either Mildenburg's consent or subsequent acquiescence and ratification binds the corporation and the others in interest in favor of Reynolds, who was a *bona fide* purchaser for value without notice of any equities.

It is a fact that is not controverted by any other fact that from the date in 1895 when this issuance of stock took place down practically to the beginning of this suit, every record of the company and everything in which Mildenburg participated and everything in which Jahn participated which had to do with the stock of this company, recognized the stock of November 18th, 1895, as valid, outstanding stock.

It seems clear to me that there are only two possible sources of attack upon this stock, one is from Mildenburg the other from the corporation, and both Mildenburg and the corporation are, in my view, clearly estopped to deny the validity of the corporate act of November 18th, 1895. The corporation then issued the stock, has always since affirmed that what it then did was correct, has always recognized this stock, and Mildenburg clearly acquiesced in and affirmed that which had been done.

There is nothing in the case to show that Reynolds is not a *bona fide* purchaser for value without notice of latent equities, and that any latent equities which either the company or Mildenburg had, or have, are ineffectual as against Reynolds with respect to this stock.

The next question to be disposed of relates to twenty-five shares of stock represented by certificate No. 23 sold by Mr. Mildenburg to Mr. Taylor. The circumstances, briefly stated, are these: Jahn, as previously stated, segregated from the one thousand shares of stock put in his hands by Mildenburg five hundred and twenty-five shares, and caused the company to issue five hundred and twenty-five new shares in place thereof. The old shares remained in his possession down to the time of his death. After his death Mildenburg secured one of these certificates, namely, No. 23, for twenty-five shares, and, claiming that, as

228 CASES IN CHANCERY.

N. Y. & East. Tel., &c., Co. *v.* Great East. Tel. Co. *74 Eq.*

between him and Jahn, he had a right to get back five hundred shares from Jahn instead of four hundred and seventy-five, the number he actually got back, he took this certificate and sold it to Mr. Taylor.

Since I hold that these old five hundred and twenty-five shares were supplanted by the new five hundred and twenty-five shares issued on the 18th of November, 1895, I hold that certificate No. 23 (a part of the old issue) is invalid, and Mr. Taylor is not, by reason of the holding thereof, entitled to be recognized as a stockholder.

As at the time that this was done all of the capital stock of the company was issued and outstanding, the taking by Milden-burg of this old certificate and reselling it does not constitute the purchaser a stockholder, although it may and probably does invest him with the right to sue the corporation for damages, if, by reason of its carelessness and negligence, it has caused him a loss. I do not, of course, decide this, but merely indicate that whatever remedy he may have is not in this suit.

The remaining issue to be disposed of concerns fifteen shares originally issued to James R. Skinner, one of the original incorporators. He paid $150, the first call, and did not thereafter pay anything. At a directors' meeting in 1897, at which it is not shown that Skinner was present, the following resolution was passed:

"Mr. Noden offered the following resolution which was seconded by Mr. Ross and adopted unanimously:

"*Resolved,* That the secretary be and he is hereby directed to serve notice on the subscribers who are in arrears on their subscription for stock, requiring payment of the same."

It is testified that the following letter was thereupon addressed to Skinner, but there is no evidence that he received the same:

"196 Schermerhorn St.,
"BROOKLYN, N. Y., March 15th, 1897.

"*James R. Skinner, Esq.,*
   *825 Putnam Ave., Brooklyn, New York:*

"DEAR SIR—In compliance with the instructions contained in a resolution of the directors of the New York and Eastern Telegraph and Telephone Company, at a meeting held on the 11th inst., you are hereby notified that you are in arrears of the second and third assessments of

ten per cent. each on your subscription for fifteen shares of the capital stock of the said New York and Eastern Telegraph and Telephone Company, payment of which has been heretofore duly called for, and the same remains unpaid.

"There is due from you a sum of $150 on each of said assessments, amounting to $300 in all, which sum please remit to James Ross, Esq., Brooklyn, New York, without delay, and in default of such payment the matter will be placed in the hands of counsel for such action as he may deem within the rights of the company. Prompt or immediate attention to this matter is respectfully and urgently requested.

"Yours very truly,
"SAMUEL H. MILDENBURG,
"*General Manager and Secretary.*"

Subsequently, and on April 3d, 1897, the directors passed a resolution in the absence of Skinner, reading as follows:

"*Whereas*, James R. Skinner, to whom fifteen shares of stock, represented by certificates Nos. 6 and 13, has failed to pay his subscription therefor. after due notice given to him, and more than sixty days having expired since the service of such notice; now, on motion of James Ross, seconded by R. Noden, it is

"*Resolved*, That the said shares of stock be and the same is hereby declared forfeited, and that the certificates issued therefor be canceled."

On the 14th of September, 1899, the directors, in the absence of Skinner, passed a resolution as follows:

"The subscription for fifteen shares of stock represented by certificates Nos. 6 and 13 not having been paid, and the certificates not having been delivered and having been canceled, and the company being indebted to E. H. Benn, attorney and counsel for the corporation, for counsel and professional services, in the sum of $1,500, on motion of James Ross, seconded by William Griffiths, it was

"*Resolved*, That new certificates for fifteen shares of stock be issued to Erastus H. Benn in payment of said sum due him."

The rights of Skinner, whatever they are, were acquired by Mildenburg, and in 1906 were sold to Taylor. The rights of Benn, if any, as a stockholder, were retained by him down to about the same period when they were sold to Reynolds. Each of these two persons claims to be the stockholder of these fifteen shares, Reynolds claiming through Benn and Taylor through Skinner.

230 CASES IN CHANCERY.

N. Y. & East. Tel., &c., Co. *v.* Great East. Tel. Co. *74 Eq.*

There is some question as to whether the original certificates for these fifteen shares were ever actually delivered to Skinner, but I think this is an immaterial detail. It is unquestionably the law that a certificate is merely evidence and does not itself constitute the right of a stockholder. Benn undoubtedly acquired physical possession of the certificates which were issued in 1899 under the resolution above quoted.

The contention of Skinner is that he never received any notice of any sort, and, therefore, has not lost whatever rights he had as a stockholder under his original subscription in the certificate of incorporation for fifteen shares. The contention of Reynolds is that Skinner was in default on a call, and while it is not claimed that the proper procedure was taken to forfeit the stock of Skinner, still the company did pass a resolution stating that the stock was forfeited, and Skinner did not do anything, which conduct on his part, it is argued by Reynolds, shows either acquiescence in the forfeiture or abandonment of his interest in the corporation, and upon this alleged acquiescence or abandonment Reynolds bases his claim to be a stockholder by reason of the stock issued to Benn in place of that to which Skinner was entitled.

It may be useful to quote two sections of our statute (*P. L. 1896 p. 284*) concerning the forfeiture of stock:

"23. If the owner of any shares shall neglect to pay any sum assessed thereon for thirty days after the time appointed for payment, the treasurer, when ordered by the board of directors, shall sell, at public auction, such number of the shares of the delinquent owner as will pay all assessments then due from him, with interest, and all necessary incidental charges, and shall transfer the shares sold to the purchaser, who shall be entitled to a certificate therefor.

"24. The treasurer shall give notice of the time and place appointed for the sale, and of the sum due on each share, by advertising the same three weeks successively, once in each week, before the sale, in some newspaper published in the county where the corporation is established, and by mailing a notice thereof to the delinquent stockholder, if he knows his post-office address."

And with respect thereto it is not useful to refer to other authorities than the one in our state which clearly holds that where stock has once been rightfully issued, even though nothing

has been paid on it by the subscriber, it can only be forfeited in the mode prescribed by the statute, and the procedure therein prescribed must be strictly followed. *Downing* v. *Potts, 23 N. J. Law (3 Zab.) 66 (Supreme Court, 1851).*

I do not understand that counsel for Reynolds claims an estoppel. There is some slight testimony, lacking certainty upon the very point, of a conversation between Reynolds and Skinner many years before Reynolds purchased the stock from Benn, in which conversation (the very holding of which is denied by Skinner) Reynolds alleges Skinner made certain statements concerning his interest or lack of interest in the corporation. There is, however, no pretence that the essential elements of estoppel were present, nothing to show that Skinner made any statements to Reynolds upon which he anticipated or had any right to anticipate that Reynolds would rely in taking action with respect to the stock of the corporation.

There is also, in my view, an entire lack of any evidence showing that Skinner acquiesced in or ratified the action taken by the corporation in attempting to forfeit the stock of Skinner. There is nothing to show that Skinner ever had any knowledge of any sort as to what the corporation had done in this respect. It is charged in the bill, and admitted in the answer, and conceded throughout the case that all that the corporation in question ever did was to acquire a franchise for a telephone system in the city of Brooklyn, that it never attempted to operate, that it lay entirely dormant, and that undoubtedly the purpose was to sell whatever it had either to a company independent of the there operating company, or to that company if it would purchase.

The real vigor of the argument on behalf of Reynolds, which was able and comprehensive, was directed to establishing the principle of law that a stockholder circumstanced as Skinner was will be held to have abandoned his rights. Counsel relied for support upon numerous authorities, the more important of which are as follows: *Pendergast* v. *Turten, 1 Y. & C. C. C. 98; 62 Eng. Reprint 807; Hart* v. *Clarke, 6 De G. M. & G. 232; 43 Eng. Reprint 1222; Clegg* v. *Edmondson, 8 De G. M. & G. 787; 44 Eng. Reprint 593; Rule* v. *Jewell, 18 Ch. Div. 660 (1881); Garden Gully Mining Co.* v. *McLister, L. R. 1 App. Cas. 39;*

232                     CASES IN CHANCERY.

N. Y. & East. Tel., &c., Co. *v.* Great East. Tel. Co.        74 *Eq.*

*Sayre* v. *Gas Light and Heat Co., 69 Cal. 207; 7 Pac. 437; 10 Pac. 408; Smith* v. *Maine Boys Tunnel Co., 18 Cal. 112; Raht* v. *Sevier Mining and Mill Co., 54 Pac. 889; 1 Cook Stock.* § *129; 2 Thomp. Corp. 1807; 2 Clark & Marsh. Pri. Corp. 1522* § *495.*

It will be observed that they go back to the case first cited, namely, *Pendergast* v. *Turten.* By reason of this fact it is necessary to receive these authorities with extreme caution, because the relationship of the parties in *Pendergast* v. *Turten* was practically that of partners in a mining venture; in fact, in the English ruling cases (*Rule* v. *Jewell, supra*), another mining case, is put under the title "Partnership and Relations Between Partners." In all of the earlier cases, from *Pendergast* v. *Turten* on, the thing in question was a mine, and the method of operation was what is termed the "Cost Book System," and the relation of the parties, although they may be termed "members" or "shareholders," is practically that of partners. The business is one exposed to hazard, fluctuations and contingencies of various kinds requiring a large outlay, as is stated in several of the above authorities, and the decision of *Pendergast* v. *Turten,* as also stated, was placed upon the peculiar nature of a mining concern, and proceeded upon the principle that the persons who do not respond to a call when they should had no right to stand by and wait until it appeared clearly that it was worth while and then come forward and attempt to assert their rights.

Some of the subsequent and other authorities have applied this doctrine to ordinary corporations; but in the absence of that which amounts to estoppel, ratification or acquiescence, each of which presupposes and requires knowledge, I do not see that this principle should be extended to a stockholder in an ordinary corporation who is ignorant of an attempted forfeiture of his shares, and who is not called upon by reason of any extraordinary circumstances to do more than act when it is incumbent upon him to act.

There is direct authority for the view I have just stated. *Morris* v. *Metlaline Land Co., 164 Pa. St. 326; 27 L. R. A. 305.*

In the case at bar the only notice which even the corporation claims to have given the stockholder (Skinner), was that there

were assessments of $300 against him on these shares which he must pay without delay, and that in default of such payment, "the matter will be placed in the hands of counsel for such action as he may deem within the rights of the company."

Since the enterprise was, as before stated, entirely dormant, and nothing was being done in the way of construction, and since it is admitted that none of the proper steps were taken or notice given to make a legal forfeiture, I remain of the same opinion as that expressed at the time of the hearing, that the Skinner stock in the hands of the present holder, Taylor, is good, and the Benn stock issued in lieu thereof, or attempted to be issued in lieu thereof, and in the hands of Reynolds, is invalid. Clearly it was invalid in the hands of Benn, the counsel of the company, who took the same for a past-due indebtedness and acquired none of the rights of a *bona fide* holder for value without notice; and it does not acquire any greater validity in the hands of Reynolds, because, as between him and Skinner, or Skinner's transferee, Taylor, the stock in question was already vested in Skinner, and had always been; and, therefore, the attempted issue to Benn was from the beginning invalid, and remained so in the hands of Reynolds.

This same holding likewise disposes of another contention of Reynolds which was vigorously pressed upon the court. This was that since Mildenburg, who participated in the issuance of the stock to Benn, and, in fact, urged Benn to take it in settlement of his fee, acquired intermediately Skinner's stock or rights, the latter in his hands were invalid as against Benn. It may be that by reason of the facts just stated equities arose in favor of Benn against Mildenburg, so that in any issue framed between them as of the time when Benn held his stock and Mildenburg had acquired Skinner's, Benn could have asserted his equities. But I do not think this affects the question to be decided, because whatever equities there were of that character did not affect the stock itself, but only Mildenburg's relation to it, and the stock itself having always been valid in the hands of Skinner, did not become void in the hands of Mildenburg, and whatever equities against Mildenburg there may have been in favor of Benn while Mildenburg held the stock did not go with it into the hands of

Taylor. For all that appears in this case, Taylor was a *bona fide* purchaser for value without notice, and having acquired what I hold to be stock which was valid in the hands of Skinner, is unaffected by equities which might have affected the stock in the hands of the intermediate holder, namely, Mildenburg.

Here, again, as was stated, with respect to another issue, it is probably true that the corporation has rendered itself liable to an action at the suit of Reynols, but it is not claimed that it should be settled in this present proceeding. I will hear counsel, if they so desire, upon the settlement of the decree, as to whether, this controversy being now in this court and all the parties present, the rights of the holders of these certificates which I hold are not valid should be adjudicated as against the company.

I will advise a decree in accordance with the above-stated views.