## LOSS OF CORPORATE STOCK THROUGH LACHES OF. THE HOLDER.

Common Pleas Court of Cuyahoga County.

ALICE HEDLEY v. THE LAKE VIEW LAND & IMPROVEMENT COMPANY.

Decided, November 9, 1912.

*Equitable Intervention—Denied to a Stockholder Guilty of Gross Laches —Stock Forfeited for Failure to Pay Assessments—Irregularities Not Available to Support a Stale Equity—Knowledge of the Fact of Forfeiture—Intervening of New Rights—Subdivision Owned by a Corporation—Lots Unsaleable for Many Years Finally Become Valuable—Delinquent Stockholder Denied Relief.*

H held stock in a corporation which acquired a tract of land ·and platted it into lots for a subdivision. ˙ The property was without street car facilities, sewers or other conveniences, and for a long period the company was in a precarious condition financially. H took no interest in its affairs and failed to pay˜assessments levied on her stock. In the meantime the property was taken over by another company with a reduced capital, the old company was dissolved and delinquent stock forfeited. At the end of fifteen years, owing to the growth of the city, the building of a street car line and provision for other improvements, the property had become valuable, and H. filed a petition in equity, praying for a decree declaring that the property was held in trust for the benefit of the stockholders of the old company.

*Held:* That H has slept upon her rights, and notwithstanding some irregularities in the manner of dissolving the old company and cancelling its delinquent stock, a court of equity will not be moved by so stale a claim, in the face of gross laches, to grant the relief which she seeks.

*Wm. Howell,* for plaintiff.
*Frank Higley,* contra.

ESTEP, J.

This action is brought by Alice Hedley, who claims to be the owner of twenty shares of stock of the Lake View Land & Im-

provement Company, a New York corporation. In her petition she sets up, at some length, her complaint against defendant, all to the effect that the transfer on September 16, 1907, of the property of the Lake View Land & Improvement Company, a corporation of the state of New York, to the Lake View Land & Improvement Company, an Ohio corporation, is illegal, being contrary to the laws of the state of New York; and she prays that the directors of the Ohio corporation be decreed to hold the property, so conveyed, in trust for the benefit of the plaintiff and other stockholders of the said New York corporation, and for an accounting, the appointment of a receiver, etc.

To this complaint, answers have been filed by the defendant corporations, in which several defenses have been asserted. Among other defenses are those of laches, a cancellation of the stock back in 1896, and several other defenses, which I will not take the time to fully set out. Reply has been filed taking issue with these defenses.

The Lake Shore Land & Improvement Company, the New York corporation, was organized March 3d, 1893. The corporation was formed for the purchase and sale of real estate, laying out and subdividing the same into building lots and villa plots, maintaining, selling and improving the same. The location of its business was in the city of Buffalo, New York, and in the city of Cleveland, Ohio, and vicinity. The capital stock consisted of 1,120 shares of the par value of $100 each. The location of its principal business office was in Buffalo. The corporation was the owner of about thirty-five acres of land located on Lake View avenue, partly in the city of Cleveland and partly in the village of East Cleveland. This corporation continued in existence up to December 26, 1907. The Ohio corporation had been previously organized to carry on the same business as had formerly been conducted by the New York corporation; and, as I have stated above, the property of the New York corporation was conveyed to the Ohio corporation on the 16th day of September, 1907, and the business had been carried on by the Ohio corporation up to the present time.

One C. J. Wheelock, since deceased, was the promoter of this enterprise. He originally owned a part of the land included in

the thirty-five acres acquired by the company. He obtained a large amount of the stock of the company, as a part consideration for his transfer of his land to the company, and was one of the directors of said New York corporation, and was active in its affairs for a few years.

W. E. Hedley, the husband of the plaintiff, had some deal with Wheelock in 1895, whereby he held forty-one shares of stock in the New York corporation, owned by Wheelock. Hedley testified that he held this stock as collateral to a small indebtedness owing to him by Wheelock. These forty-one shares of stock were in three certificates, one for one, one for twenty, and another for twenty shares. Two certificates had written in red ink on the face of the stock the word "assessable"; the remaining certificate, and the one claimed by the plaintiff, had nothing marked upon it. Hedley says that in 1896, he had his wife purchase the certificate No. 4, calling for twenty shares, and not marked assessable; that she paid $100 for said twenty shares, and that in all subsequent matters relating to said stock he acted as agent for the plaintiff.

It is admitted that Hedley never presented said stock to the corporation for transfer upon its books, and that he never paid or offered to pay any unpaid assessments upon said stock.

As early as October 29, 1895, Mr. Hedley wrote or sent a letter to E. L. Brown, 224 Bank street, Cleveland, Ohio, the secretary of the New York corporation, in which he states that Mr. Wheelock informed him that Mr. Brown had charge of the affairs of the corporation, and that Mr. Wheelock had placed in his hands forty-one shares of stock of the company. In this letter he asks if there are any unpaid assessments against the stock. He also asks for a statement of the condition of the company. This letter was followed by another, of date of February 13, 1896. This was answered by Mr. Brown on February 14, 1896. It was written on paper containing the letter-head of the corporation, and the names of all the officers. It conveyed the information that there were two unpaid assessments upon this stock, and the letter was signed by E. L. Brown, secretary Lake View Land & I. Co. As late as November 21, 1896, Hedley wrote to E. L. Brown, at 224 Bank street, Cleveland, Ohio, ask-

ing for "the record numbers of the certificates of stock belonging to C. J. Wheelock, which were canceled as I heard by the Lake View Land & Imp. Co." This letter was never answered, in so far as the record shows. It appears, however, that the forty-one shares—certificate No. 4 being a part thereof—were all the stock standing in Wheelock's name at this time. It is clear that, as early as 1895, Hedley knew that the principal business affairs of the Lake View Land & Improvement Company of New York were conducted in the city of Cleveland, the place where its property was located. He knew the location of its office, and had correspondence with its secretary at Cleveland. It further appears from the testimony that, as early as February 14, 1896, he knew that there were unpaid assessments upon this stock; and from his letter of November 21, 1896, it appears that he had been informed that the stock had been canceled for non-payment of assessments. From November 21, 1896, to December 12, 1905, nothing further was heard from Hedley. Upon the latter date he wrote John Mitchell, president of the New York corporation, stating for the first time that he held the 41 shares of stock in the company as owner thereof, giving the number of shares, and asked for information as to the condition of the company. On December 15, 1895, President Mitchell enclosed Hedley a letter from B. F. Whitman, treasurer of the company, in which Mr. Whitman states that the stock in question was originally issued to C. J. Wheelock, and by a vote of the board of directors at a meeting held November 14, 1899, was canceled, on account of non-payment of assessments.

In the years 1895, 1896 and 1897, W. E. Hedley was interested in a real estate investment in Cleveland, the property being located on Lorain street. He says he was in Cleveland fifteen or twenty times during this period of time; that he never went near the office of the company, and made no attempt to see or consult the officers of the company; that he never went to see the land owned by the company, and, in short, made no effort, while here, to get any information in regard to the condition and status of the forty-one shares of stock, or to obtain any information in regard to the company. He displayed no interest in the company or its affairs. It further appears that,

after he received the definite notice in regard to the claimed forfeiture of the stock in question, contained in the letter of B. F. Whitman, treasurer, dated December 14, 1905, Mr. Hedley remained silent again for nearly six years, and then for the first time undertook to assert a claim against the defendants. An action was commenced by the plaintiff at Buffalo against defendants later in 1911, but this action was discontinued, and the present action was filed in this court on April 27, 1912.

The condition of the affairs of the two corporations during this period of time may throw some light upon plaintiff's conduct.

It appears from the proof that the affairs of the Lake View Land & Improvement Company of New York were in a precarious condition for many years. Its land was located so that it had practically no street car service, no proper system of sewers, and few, if any, improvements necessary to make it marketable property.

In 1907, at the time of the taking over of the property of the New York corporation by the Ohio corporation, Mr. Bond, the secretary of the New York corporation at that time, testified that the stock was worth, in his opinion, about $10 per share. He says that Capt. Mitchell insisted on exchanging one share of stock in the New York corporation, of the par value of $100, for one share in the Ohio corporation of the par value of $40, and this plan was carried out. Within the last two years the property has been properly sewered. The Superior street car service has been extended to this allotment, and the land has rapidly increased in value. After carrying this property for nineteen years, during which time the growth of the city has brought to it the improvements mentioned, the property has become valuable, and the stock, at the time this action was commenced, was considerably increased in value.

There are many technical objections urged by the plaintiff against the claimed forfeiture of the stock involved in this action, and I am inclined to think the proceedings may have been somewhat irregular. It also appears that the property of the New York corporation, being the land owned by it and located in this county, was conveyed to the Ohio corporation before the actual

dissolution of the New York corporation. The deed of convey-ance was dated September 16, 1907. The final dissolution of the New York corporation occurred on the 26th of December, 1907, although the resolution of the ·board of directors to dissolve the company was passed on the 16th day of September, 1907, the same date the property was transferred. It is also claimed that the books of the company should have been kept and the main business of the corporation should have been carried on in the Buffalo office. A great many sections of the ·laws of New York, governing corporations, bearing upon the questions urged, have been placed in evidence.

I might also add that the evidence shows that after a consider-able amount of the stock of various persons had been forfeited, regularly or irregularly as the case may be, by the New York corporation, the stock of said company was reduced from $112,-000 to $90,000, thus eliminating all of the forfeited or canceled stock.

It appears from all the evidence that some of the proceedings relating to the various transactions under consideration have been irregular; and if this case is to be disposed of upon close technical questions, the plaintiff would probably recover. This proceeding, however, is one in equity. The plaintiff is now seeking the equitable intervention of this court in her behalf. Do the facts justify such relief at this time? Has the plaintiff slept upon her rights? In other words, is she guilty of laches?

The facts show, after knowledge of assessments against her stock in 1896, that nothing was ever done by her towards paying the assessments or tendering the same and demanding a trans-fer of the stock; nor were any legal steps taken by her to assert any rights she may have had. The evidence shows that plaintiff, through her agent, knew, from the year 1896 down to the time of bringing her action in 1912, that the principal business of both corporations was conducted in Cleveland; that the property owned by said corporation was located in or near Cleveland; that the books of the companies were kept in Cleveland, and that the principal officers resided there. The plaintiff's agent was in Cleveland many times after learning of the assessments upon the stock; and the evidence shows that no attempt was made to

visit the officers of the company or to ascertain the condition of the stock or the company. The undisputed proof is to the effect, that from 1896 to 1911, the plaintiff made no offer to pay the assessments upon the stock, made no request to have the stock transferred to her upon the books of the company, and also made no claim of a conversion of the stock by the company in its efforts to forfeit and cancel the same. It also appears from evidence that during all the years the companies were financing the enterprise, the plaintiff remained quiet; and it was not until the financial success of the enterprise was assured in 1911, that the plaintiff made any claims against defendants. In the meantime the capital stock of the company, by reason of cancellations of stock, including the stock claimed by the defendant, had been reduced from $112,000 to $90,300; the old corporation was dissolved, and its property had been conveyed to the new or the Ohio corporation. What, under all these circumstances, should a court of equity do? Is the equitable doctrine of laches applicable?

In the case of *Bridenbaugh* v. *King*, 42 O. S., 413, Okey, **J.**, says:

"In *Smith* v. *Clay*, 3 Brown's Chan., 640, Lord Camden says: 'A court of equity, which is never active in relief against conscience or public convenience, has always refused its aid to stale demands, where the party has slept upon his rights or acquiesced for a great length of time. Nothing can call forth this court into activity but conscience, good faith and reasonable diligence. Where these are wanting, the court is passive and does nothing. Laches and neglect are always discountenanced.''

This language has been expressly approved in *Tuttle* v. *Wilson*, 10 O., 27; *Pendleton* v. *Galloway*, 9 O., 180; and *Clark* v. *Potter*, 32 O. S., 59.

To determine whether a party is guilty of laches, each case must be decided according to its own particular circumstances, taking into consideration all the elements which affect the question. *Kemper* v. *Appolo Bldg.*, 11 O.C.C.(N.S.), 372.

It has also been held that what constitutes a stale equity depends on the facts and circumstances of each case, and not on lapse of time alone. *Paschell* v. *Hinderer*, 28 O. S., 569.

In 10 Cyc., 508, the writer, in commenting upon the fact that an illegal or irregular forfeiture of stock has taken place, says that the stockholder is released from his liability for the debts of the corporation, and that the additional liability is imposed upon the remaining stockholders; the text further states:

"It follows that if, with a knowledge that such forfeiture has been allowed, they stand by for a considerable length of time and take no steps to undo it, they will be excluded from relief in equity on the ground of laches."

The doctrine is also clearly laid down, that the forfeiture, although illegal or defective, is not void but voidable only.

In *4 Thompson on Corporations*, at Section 3751, the law relating to laches and stale equity is laid down as follows:

"The right of a stockholder to invoke the aid of equity in case of invalid or illegal forfeiture may be waived by acquiescence or delay, and, as in analogous cases, he must act promptly to obtain relief. This doctrine has been applied when stock was wrongfully forfeited and sold with the stockholder's knowledge at a time when said stock was of little value, but afterwards, by some change of circumstances and the diligence of other stockholders, it becomes valuable, and the original holder then attempted to recover it by suit in equity." * * *

In answer to the question as to whether this could be done, the author says: "We think not."

"If the property is of a *speculative* or precarious nature, it is the duty of a man complaining of fraud to put forward his complaint at the earliest possible time. He can not be allowed to remain passive, prepared to affirm the transaction if the concern should prosper, or to repudiate it if that should prove to his advantage.

"It is generally necessary that a bill in equity to redeem or to seek other relief should aver an offer to pay, or should show a willingness to pay the debt. * * * An irregular or defective forfeiture is voidable, but not void, and subsequent acquiescence by the stockholders and the corporations, with knowledge, will estop them from denying the validity of the forfeiture. * * *

"An action for relief to set aside an invalid sale of stock for non-payment of assessments must be exercised within a reasonable time; and what constitutes such reasonable time must be

decided in each case upon the elements which affect the question.'' * * *

In the case of *Raht* v. *Mining Company*, 18 Utah, 290, it is held:

''A forfeiture of shares of stock, when the forfeiture was irregular or defective in form, is not void but voidable; and, by subsequent knowledge and acquiescence, the shareholder and company are alike estopped to deny its validity. Equity will refuse to assist a stockholder who acquiesces in a forfeiture of his shares as long as they are valueless, and then, when they become valuable by reason of changed circumstances or by the efforts of innocent parties, seeks to be reinstated in the rights which he previously repudiated.''

The case of *Sayre* v. *Gas Light & Heat Company*, 69 Cal., 207, was a case of sale of stock for non-payment of assessments.

In the action at bar, the stock was claimed by the company to have been forfeited, and was canceled at a time when the stock of the company was reduced. The court in the Sayres case, at page 231, says:

''If the assessment and sale were invalid, he then had the right to commence proceedings to vacate the assessment and sale and recover his stock. The reason he did not do so is manifest from the evidence as well as the findings. By reason of formidable competition that existed to the business of the company, the stock had little or no value, and the prospects of the company were poor. All of this he knew. * * * If he had the right to repudiate the sale of stock upon the ground that it was not assessable, or for any other cause, was it not incumbent on him to act with diligence? Could he acquiesce in the sale as long as the stock was of little value, but when by the exertions of others * * * it became of more value, come into a court of equity and claim an equivalent of the stock of the new company? We think not.''

This doctrine is recognized in *Hayward* v. *National Bank*, 96 U. S., 611. At page 617, Justice Harlan says:

''Courts of equity often treat a lapse of time, less than that prescribed by the statute of limitations, as a presumptive bar, on the ground of discouraging stale claims, or gross laches, or unexplained acquiescence in the assertion of an adverse right.'' *2 Story Equity*, 1520.

He also quotes with approval *Smith* v. *Clay*, which I have already referred to.

See also 91 U. S., 587.

Holding the opinion that the law, as above stated, is the law applicable to this case, as I understand it; and the plaintiff having, during all the years between 1896 and 1911, failed to take any steps to pay any assessment upon this stock, or to have instituted any action to set aside the forfeiture of the stock or to sue for its conversion by the company, or to pursue any remedy in relation thereto, I am of the opinion that the plaintiff has slept upon her rights, and that she ought not now to be permitted to assert her claim against defendant as an alleged stockholder.

Her petition is therefore dismissed.

---

## APPEAL QUASHED FOR IRREGULARITY.